**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC, *et al.,*<br><br>    Post-Effective Date Debtors. | **FOR PUBLICATION**<br><br>Case No. 22-10964 (MG)<br><br>Chapter 11 |
| MOHSIN Y. MEGHJI, as Representative for the Post-Effective Date Debtors,<br><br>    Plaintiff,<br><br>v.<br><br>ALEXANDER MASHINSKY, SHLOMI DANIEL LEON, HANOCH GOLDSTEIN, RONI COHEN-PAVON, HARUMI URATA-THOMPSON, JEREMIE BEAUDRY, JOHANNES TREUTLER, KRISTINE MEEHAN MASHINSKY, ALIZA LANDES, AM VENTURES HOLDING, INC., KOALA1 LLC, KOALA2 LLC, KOALA3 LLC, ALCHEMY CAPITAL PARTNERS, LP, BITS OF SUNSHINE LLC, AND FOUR THIRTEEN LLC,<br><br>    Defendants. | Adv. Proc. No. 24-03667 (MG) |

**MEMORANDUM OPINION AND ORDER (I) GRANTING THE LITIGATION ADMINISTRATOR'S MOTION FOR ENTRY OF AN ORDER LIFTING THE STAY OF THE PROCEEDINGS AND (II) DENYING THE TROUTMAN AND LOWENSTEIN GROUPS' MOTION TO INTERVENE**

*A P P E A R A N C E S:*

WHITE & CASE LLP
*Counsel to the Litigation Administrator*
555 South Flower Street
Suite 2700
Los Angeles, California 90071
By: Aaron Colodny, Esq. (admitted *pro hac vice*)

1221 Avenue of the Americas
New York, New York 10020
By:   David M. Turetsky, Esq.
      Samuel P. Hershey, Esq.
      Kathryn J. Gundersen, Esq.

111 South Wacker Drive
Suite 5100
Chicago, Illinois 60606
By:   Jason N. Zakia, Esq. (admitted *pro hac vice*)
      Gregory F. Pesce, Esq. (admitted *pro hac vice*)

RUSKIN MOSCOU FALTISCHEK, P.C.
*Counsel to Alexander Mashinsky, Koala1 LLC, and AM Ventures Holding, Inc. and, with authorization from their respective counsel, Harumi Urata-Thompson, Jeremie Beaudry, Koala2 LLC, and Kristine Meehan*
1425 RXR Plaza
East Tower, 15th Floor
Uniondale, New York 11556
By:   Sheryl P. Giugliano, Esq.

TROUTMAN PEPPER LOCKE LLP
*Counsel to the Troutman Group*
875 Third Avenue
New York, New York 10022
By:   Deborah Kovsky-Apap, Esq.

LOWENSTEIN SANDLER LLP
*Counsel to the Lowenstein Group*
1251 Avenue of the Americas
New York, New York 10020
By:   Daniel Besikof, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the contested motion (the "Lift Stay Motion," ECF Doc. # 25) of Moshin Y. Meghji (the "Plaintiff" or "Litigation Administrator") in his capacity as Litigation Administrator of the post-effective date debtors' (collectively, prior to the Effective Date, the "Debtors" and, after the Effective Date, the "Post-Effective Date Debtors") estates. The Lift Stay Motion seeks entry of an order (i) lifting the stay (the "Stay") of the above-

2

captioned adversary proceeding (the "Adversary Proceeding") with respect to the named defendants (collectively, the "Defendants") that include former directors, officers, and employees of the Debtors and certain of their affiliated entities; (ii) setting January 24, 2025 as the deadline for all Defendants to respond to the adversary complaint (the "Complaint," ECF Doc. # 1); and (iii) granting such other relief as just and proper.[1] (Lift Stay Motion at 2, 5.) Annexed to the Lift Stay Motion, as Exhibit 1, is a proposed order granting the relief sought.

Relatedly, on January 10, 2025, counsel to approximately 600 defendants represented by Troutman Pepper LLP (the "Troutman Group") and Lowenstein Sandler LLP (the "Lowenstein Group" and, together with the Troutman Group, the "TL Customers") in separate adversary proceedings brought by the Plaintiff to avoid and recover transfers and/or disallow claims pursuant to 11 U.S.C. §§ 502, 547, and 550 (the "Customer Preference Actions"), filed the *Motion of the Troutman Group and Lowenstein Group to Intervene for the Limited Purpose of Responding to Plaintiff's Motion for Entry of an Order Lifting the Stay of the Proceedings and Any Subsequent Scheduling Matters* (the "Motion to Intervene," ECF Doc. # 28). (*See Revised Motion for an Order Establishing Streamlined Procedures Governing Avoidance Actions Pursuant to Sections 502, 547, and 550 of the Bankruptcy Code* (Adv. Proc. No. 24-04024, ECF Doc. # 3 (defining the Troutman Group and Lowenstein Group); Motion to Intervene at 2 (referencing the same).) The Motion to Intervene seeks entry of an order authorizing the TL Customers to intervene in this Adversary Proceeding for the limited purpose of responding to the Lift Stay Motion and "any subsequent scheduling matters." (*Id.*) Annexed to the Motion to Intervene, as Exhibit 1, is a proposed order granting the relief sought.

---

[1] Unless otherwise indicated, docket references shall refer to those filed in the Adversary Proceeding.

3

On January 10, 2025, certain of the named Defendants filed an opposition (the "Opposition," ECF Doc. # 29) to the Lift Stay Motion (collectively, the "Opposing Defendants").  The Opposing Defendants are comprised of Alexander Mashinsky ("Mashinsky"), AM Ventures Holding, Inc., Koala1 LLC, Harumi Urata-Thompson, Jeremie Beaudry, Koala2 LLC, and Kristine Meehan.[2]

On January 17, 2025, the Litigation Administrator filed an omnibus reply (the "Omnibus Reply," ECF Doc. # 34) to the Opposition and the Motion to Intervene.

For the reasons discussed below, the Court **GRANTS** the Lift Stay Motion and **DENIES** the Motion to Intervene.

## I.   BACKGROUND

**A. Relevant Background**

1. The Criminal Case

In July 2023, a Grand Jury in the Southern District of New York voted an Indictment against Alexander Mashinsky and Roni Cohen-Pavon, each a defendant in this suit.  (Lift Stay Motion ¶ 4.)  The Indictment was unsealed and filed on July 13, 2023, and the case was docketed as 23 CR 347 (JGK) (the "Criminal Case").  (*Id.*)  On September 13, 2023, Mr. Cohen-Pavon pleaded guilty to securities fraud and wire fraud.  (*Id.*)

---

[2] The signature block for counsel to the Opposing Defendants indicates that she is counsel to "Mashinsky, Koala1 LLC, AM Ventures Holding[], Inc., and with authorization from counsel to Opposing Defendants." (Opposition at 14.)  As discussed below, counsel indicated to the Litigation Administrator that she was "authorized to represent" the positions of "Defendants Urata-Thompson, Goldstein, Beaudry, Kristine Meehan [] and their affiliated Defendant entities." (Lift Stay Motion ¶ 14.)  Note also that the Litigation Administrator refers to Ms. Meehan as Kristine Meehan Mashinsky, which counsel to the Opposing Defendants clarifies is not her legal name. (Opposition at 1, n.1.)

4

2. First Stipulation Staying Proceedings to Equitably Subordinate Claims

Prior to the commencement of the Adversary Proceeding, the Debtors sought to equitably subordinate claims of certain of the Defendants in connection with confirmation of their then-proposed plan of reorganization. (*Id.* ¶ 5.) Prior to the confirmation hearing, the United States Attorney's Office for the Southern District of New York (the "SDNY") requested that the Debtors and the Official Committee of Unsecured Creditors (the "Committee") agree to stay proceedings with respect to equitable subordination and other related matters.[3] (*Id.*)

On September 12, 2023, the Court approved the *Joint Stipulation and Agreed Order Between the Debtors, the Official Committee of Unsecured Creditors, and the United States Attorney's Office for the Southern District of New York with Respect to Agreement to Stay the Proceedings with Respect to Equitably Subordinated Claims* (the "First Stipulation," Case No. 22-10964, ECF Doc. # 3450), which was entered in the main case. The First Stipulation provided that the equitable subordination of claims of certain former directors, officers, and employees of the Debtors and certain of their affiliated entities (the "Equitably Subordinated Claims") would be stayed until the earlier of (i) September 12, 2024, or (ii) the final disposition of the Criminal Case. (*Id.* ¶ 6; First Stipulation at 3 (defining Equitably Subordinated Claims).) In addition, the First Stipulation also provided that the draft Complaint filed by the Committee that made allegations with respect to, and asserted claims against, the Defendants could be filed and served but would be subject to the stay set forth in the First Stipulation. (Lift Stay Motion ¶

---

[3] As noted in the recitals to the First Stipulation, the SDNY also intended to seek a stay of other pending civil matters that "concern[ed] the subject matter of the Indictment during the pendency of the Criminal Case to the extent that discovery in those actions would present a risk of significant interference with the Criminal Case," among other things. (First Stipulation at 4–5; *see also Status Report Regarding Litigations Against Former Executives and Employees of the Debtors* (the "8/26/24 Status Report," ECF Doc. # 14) ¶ 18 (updating the Court as to the status of each of the stayed civil proceedings, including those pending in the District of New Jersey, the Southern District of New York, and the Supreme Court for the State of New York, County of New York.).)

5

6.) The Litigation Administrator notes that, at the time, no Defendant objected to the proposed stay or was party to the First Stipulation. (*Id.*)

After entry of the First Stipulation, trial in the Criminal Case was adjourned from September 17, 2024 to January 28, 2025. (*Id.* ¶ 7; *see also* 8/26/24 Status Report ¶ 11.) Accordingly, by its terms, the stay imposed under the First Stipulation was set to expire on September 12, 2024. (Lift Stay Motion ¶ 7.)

        3. <u>Commencement of the Adversary Proceeding</u>

On July 10, 2024, the Litigation Administrator filed the Complaint against the Defendants, commencing the Adversary Proceeding. After filing of the Complaint, on July 17, 2024, the Litigation Administrator filed a notice (the "Notice of Stay," ECF Doc. # 2), indicating that the Adversary Proceeding, which concerns certain of the same subject matter as Mashinsky's criminal indictment, was governed by the First Stipulation and stayed until September 12, 2024. (Notice of Stay at 3.)

        4. <u>Second Stipulation to Stay the Adversary Proceeding</u>

In light of the delay of the Criminal Case, the SDNY requested the Litigation Administrator agree to extend the stay until the conclusion of the jury trial in the Criminal Case. (Lift Stay Motion ¶ 9.) The Litigation Administrator did not object to a further stay, and together with the SDNY, filed the *Joint Stipulation and Agreed Order Between the Litigation Administrator and the United States Attorney's Office for the Southern District of New York With Respect to Agreement to Stay the Proceedings* on August 26, 2024 (ECF Doc. # 15), which the Court so-ordered the next day (the "Second Stipulation," ECF Doc. # 16). (*Id.*) The Second Stipulation provided that the proceedings in Adversary Proceeding would be stayed "until the

6

earlier of (1) the conclusion of the jury trial with respect to the Criminal Case that is scheduled to begin on January 28, 2025, or (2) March 31, 2025." (Second Stipulation ¶ 1.)

The Second Stipulation was circulated to all known counsel for the Defendants on August 20, 2024. (Second Stipulation at 4.) Counsel to Mashinsky, Jeremie Beaudry, Hanoch Goldstein, Kristine Meehan, Koala1 LLC, Koala2 LLC, Koala3 LLC, Four Thirteen LLC, Bits of Sunshine LLC, AM Ventures Holding, Inc., and Harumi Urata-Thompson informed the Litigation Administrator that their clients did not object to the stay. (*Id.*) Meanwhile, counsel to Roni Cohen-Pavon, Johannes Treutler, Shlomi Daniel Leon, Aliza Landes, and Alchemy Capital Partners, LP did not respond (collectively, the "Non-Responsive Defendants"). (*Id.*)

Ultimately, only counsel to the Litigation Administrator and the SDNY were signatories to the Second Stipulation. (*Id.* at 7.) At the hearing held on August 27, 2024, counsel to the Litigation Administrator indicated that certain of the defendants who did not oppose an extension of the stay "did not wish to execute the stipulation." (8/27/24 Hr'g Tr. at 130:16–21; *see also* Omnibus Reply at 4 n.4 (indicating that all Defendants were offered an opportunity to execute the Second Stipulation, but none did).)

On September 5, 2024, the Court entered an order (the "Stay Order," ECF Doc. # 21), granting the Litigation Administrator's *Motion for a Stay of the Proceedings* (the "Stay Motion," ECF Doc. # 19) and making clear that the stay set forth under the Second Stipulation applied to proceedings with respect to all Defendants, including the Non-Responsive Defendants. (Stay Order ¶ 2 ("The proceedings with respect to all Defendants are hereby stayed according to the terms set forth in the [Second Stipulation]."); Stay Motion ¶ 12 ("For avoidance of any doubt, and pursuant to the Court's instruction at the pretrial conference held on August 27, 2024, the

7

Litigation Administrator moves to extend the stay as to all Defendants, including the Non-Responsive Defendants.").)

      5.   <u>Mashinsky's Guilty Plea</u>

On December 3, 2024, Defendant Mashinsky pleaded guilty to count two (commodities fraud) and count five (securities fraud) of the Indictment in the Criminal Case. (Lift Stay Motion ¶ 12.) The District Court accepted Mashinsky's guilty plea, eliminating the need for the jury trial in the Criminal Case. (*Id.*) Presently, Mashinsky's sentencing hearing is scheduled for April 8, 2025. (*Id.*)

      6.   <u>Agreement to Lift the Stay</u>

As a result of Mashinsky's guilty plea and the cancellation of the jury trial in the Criminal Case, the Litigation Administrator conferred with the SDNY regarding the Stay. (*Id.* ¶ 13.) The SDNY consented to the Stay being lifted, agreeing that it was no longer needed. (*Id.*)

Accordingly, on December 10, 2024, counsel to the Litigation Administrator emailed counsel for each Defendant to (i) inform them that the SDNY agreed that there was no longer a need for the Stay and (ii) negotiate a deadline for the Defendants to respond to the Complaint. (*Id.* ¶ 14.) Counsel to Mashinsky, however, responded and indicated that she did not believe the Stay had expired and opposed lifting the Stay. (*Id.*) She also indicated that she was authorized to represent that Defendants Harumi Urata-Thompson, Hanoch Goldstein, Jeremie Beaudry, Kristine Meehan and their affiliated Defendant entities agreed the Stay had not been lifted and objected to moving ahead absent any other changes.[4] (*Id.*)

---

[4] Note that Hanoch Goldstein is not listed in the Opposition as being an Opposing Defendant. (*See* Opposition at 1 (defining "Opposing Defendants" to include "Mashinsky, AM Ventures Holding[], Inc., Koala1 LLC, Harumi Urata-Thompson, Jeremie Beaudry, Koala2 LLC, and Kristine Meehan" only).)

8

### B. The Lift Stay Motion

The Litigation Administrator seeks entry of an order that lifts the stay of the Adversary Proceeding with respect to all Defendants and establishes January 24, 2025 as the deadline for all defendants to respond to the Complaint. (*Id.* at 5.) The Litigation Administrator asserts that, because the jury trial with respect to the Indictment has been cancelled, the Stay has already expired by its terms and is no longer needed. (*Id.* ¶ 15.) However, given certain Defendants' opposition to a lifting of the Stay, the Litigation Administrator seeks entry of an order that will formally lift the Stay and set a response deadline to the Complaint. (*Id.*)

### C. The Motion to Intervene

In connection with the Lift Stay Motion, the TL Customers filed the Motion to Intervene, seeking authorization to intervene in the Adversary Proceeding, pursuant to Rule 24 of the Federal Rules of Civil Procedure[5] and section 1109(b) of the Bankruptcy Code, for the sole purpose of responding to the Lift Stay Motion and "any subsequent scheduling matters." (Motion to Intervene at 2; *id.* ¶¶ 11–13.)

Notably, with respect to the Stay, the TL Customers indicate that they "take no position on whether lifting of the stay of the [] Adversary Proceeding is appropriate at this time." (*Id.* at 2.) However, they are concerned that they will be "significantly and adversely impacted" if the issues identified in the Customer Preference Actions, which are subject to a separate procedures order, are litigated first in this Adversary Proceeding.[6] (*Id.*; *see also id.* ¶ 9 (arguing that any

---

[5] Rule 7024 of the Federal Rules of Bankruptcy Procedure make Rule 24 of the Federal Rules of Civil Procedure applicable to adversary proceedings. (*See* FED. R. BANKR. P. 7024.)

[6] On November 7, 2024, the Court entered the *Order Granting Revised Motion for an Order Establishing Streamlined Procedures Governing Avoidance Actions Pursuant to Sections 502, 547, and 550 of the Bankruptcy Code* (the "Streamlined Procedures Order," Adv. Proc. No. 24-04024, ECF Doc. # 36) that establishes a two-phase process to address the Customer Preference Actions. Annexed to the Streamlined Procedures Order as Exhibit 1 is a list of all adversary proceedings that are subject to the procedures set forth therein, which does not include the Adversary Proceeding. (*See* Streamlined Procedures Order, Ex. 1.)

9

defenses the Defendants may assert "will almost certainly include Phase Two [] Issues, and may also include . . . Phase One [] Issues").) Accordingly, they argue that they possess a right to intervene pursuant to section 1109(b) of the Bankruptcy Code and Rules 24(a)(1) and (a)(2) of the Federal Rules of Civil Procedure. (*Id.* ¶¶ 12, 18; *see also id.* ¶¶ 14–17 (arguing that the Motion to Intervene is timely, the TL Customers have a substantial legal interest in determination of the issues identified, their ability to protect the integrity of the Streamlined Procedures Order and their opportunity to be heard will otherwise be impaired, and the Defendants do not adequately represent the TL Customers' interests in negotiating a scheduling order in the Adversary Proceeding).)

### D. The Opposition

The Opposing Defendants assert that lifting the Stay is "entirely premature, unnecessary, and prejudicial" to Mashinsky's "constitutional rights to a fair sentencing hearing in the pending Criminal Case and the rights of all defendants in the [Customer Preference Actions]."[7] (Opposition at 1.) Thus, they request that the Court deny the Lift Stay Motion and keep it in place until Mashinsky's criminal sentencing on April 8, 2025 or, in the alternative, through the current expiration date of March 31, 2025.[8] (*Id.* at 14.)

As a gating matter, the Opposing Defendants seek to make clear that they are parties to the Second Stipulation, which defines the term "Parties" to include the Defendants. (*Id.* at 2, 5–6 (citing also to the recitals to the Second Stipulation that summarize which Defendants

---

[7] The Opposing Defendants further indicate that they do not consent to the Court's jurisdiction in the Adversary Proceeding and preserve all rights, defenses, and objections, including as to the Court's jurisdiction. (Opposition at 1 n.2.)

[8] Mashinsky's sentencing is scheduled for April 8, 2025, as opposed to April 9, 2025, as provided for in the Opposition. (*See USA v. Mashinsky et al.*, No. 23 CR 347 (JGK) (S.D.N.Y. Dec. 3, 2024) Docket Entry ("Sentencing set for 4/8/25 at 11:30 AM").)

10

consented).)  In any event, they assert that they have standing pursuant to section 1109(b) of the Bankruptcy Code.  (*Id.* at 6.)

The Opposing Defendants also allege that they did not receive proper service of the Lift Stay Motion because the "third-party process server's email . . . was flagged as spam or otherwise held in quarantine" and the "email itself did not specify that it was 'service' or 'notice' of a newly-filed motion in this Adversary Proceeding."  (*Id.* at 5.)

As for the Stay, the Opposing Defendants reject the Plaintiff's assertion that the Stay expired by its own terms since, in their opinion, "the potential need for a jury trial has not been eliminated."  (*Id.* at 8.)  Mashinsky's plea agreement covers only two of the seven charged counts, and the U.S. Government will only move to dismiss the open counts "at the time of sentencing."  (*Id.*)  In other words, in their view, "the criminal case . . . is still ongoing and will not be over until the 'time of sentencing.'"  (*Id.*)

Rather, the Opposing Defendants argue that the Second Circuit's six-factor test in deciding whether to issue or extend a stay weighs in favor of denying the Lift Stay Motion. First, they maintain that granting the relief sought will infringe on Mashinsky's Fifth Amendment rights, including through sentencing, and the Plaintiff has not otherwise provided any justification to lift the Stay at this time.  (*Id.* at 1–2 (arguing, among other things, that the Litigation Administrator has failed to show any urgency or risk of prejudice if the Stay were not to be lifted); *id.* at 9 (asserting that the Fifth Amendment privilege continues until judgment has been entered at sentencing).)  It is uncontested, they contend, that there is overlap between the Adversary Proceeding and the Criminal Case such that a lifting of the stay will "pose a significant risk of prejudice."  (*Id.* at 10.)  Any concessions Mashinsky makes in the Adversary Proceeding, they believe, could potentially create "adverse consequences," including an

11

enhancement of his sentence, a refusal by the court to grant the U.S. Government's motion to dismiss the remaining five counts, or even a rejection of the stipulations set forth in the plea deal. (*Id.* at 11.) The Opposing Defendants also argue that they, as a whole, may also "collectively suffer prejudice if the Stay is lifted before the conclusion of [the Criminal Case]." (*Id.*) Indeed, the proposed deadline of January 24, 2025, for the Defendants to respond to the Complaint could result in discovery commencing "well before" Mashinsky's sentencing. (*Id.*) Therefore, they believe that the Court should find that the Stay is needed. (*See id.* at 8–11.)

Lastly, the Opposing Defendants highlight four additional factors that support a continuation of the Stay. *First*, they argue that keeping the Stay through Mashinsky's sentencing is a "minimal period of time that does not prejudice [the] Plaintiff" and there are no "material risks" in keeping the status quo. (*Id.* at 12–13.) *Second*, maintaining the Stay is more efficient for the Court and the parties, given the overlapping issues between the Adversary Proceeding and the Criminal Case as well as the other stayed civil matters. (*Id.*) *Third*, lifting the Stay here, they contend, will allow the Adversary Proceeding to "leap ahead of other related matters," and the Plaintiff has failed to offer any explanation for why this should be the case. (*Id.* at 13.) *Fourth*, the Plaintiff has not shown that all Defendants were "validly served process," and denying the Lift Stay Motion will grant the Litigation Administrator additional time to effect proper service. (*Id.* at 14.)

### E. The Omnibus Reply

As an initial matter, the Litigation Administrator continues to argue that the Stay has expired by its own terms and, in any event, the only two signatories to the Second Stipulation have agreed that the Stay should be lifted. (Omnibus Reply ¶¶ 5–6.) By its terms, the Stay was to remain in place until the earlier of the "conclusion of the jury trial with respect to the Criminal

Case . . . or March 31, 2025." (*Id.* ¶ 5.) Indeed, it is undisputed, the Litigation Administrator maintains, that the jury trial is cancelled and will not occur, and the Stay is not conditioned on whether claims exist, but rather on whether the January 28 jury trial has concluded. (*Id.* ¶¶ 6–7.)

Alternatively, the Litigation Administrator argues that grounds nonetheless exist to lift the Stay. While it concedes that there is a subject-matter overlap between the Adversary Proceeding and the Criminal Case, the balance of the Second Circuit's six-factor test does not support continuing the Stay. (*Id.* ¶ 11.) The Opposing Defendants have not demonstrated any "concrete prejudice," they argue, and anything they have put forth here is speculation. (*Id.* ¶ 14.) Rather, the Litigation Administrator, the public, and the Court all possess a strong interest in proceeding with the matter. (*Id.* ¶ 15.) In addition, the Litigation Administrator indicates that it has served all but one Defendant—Johannes Treutler—who is on notice of the Adversary Proceeding. (*Id.* at 8 n.5.)

Finally, the Litigation Administrator indicates that it intends to coordinate the trial schedule in this Adversary Proceeding with the Customer Preference Actions in the "interest of judicial economy." (*Id.* ¶ 17.) Specifically, the Litigation Administrator makes clear that it only seeks to "set a deadline for the Defendants to file responsive motions or answers [to] the Complaint." (*Id.*) Any legal issues raised in those motions, it believes, may be dealt with on a similar timeline to "Phase One" litigation in the Customer Preference Actions, since other common issues requiring fact and expert discovery are not ripe for motions to dismiss. (*Id.*) It notes also that motion practice in the Adversary Proceeding will, any event, "take some time" such that, even if the Lift Stay Motion is granted, "no discovery will occur before April 8, 2025," the date of Mashinsky's sentencing hearing. (*Id.* ¶ 4.) The Litigation Administrator maintains

13

that, after any motions to dismiss have been resolved, the "parties can work with the Court to craft a case management schedule that protects all parties' rights." (*Id.*)

## II.    DISCUSSION

### A. The Stay Has Expired By its Own Terms

Per the plain language of the Second Stipulation, the Stay of the Adversary Proceeding expires "upon the earlier of (1) ***the conclusion of the jury trial with respect to the Criminal Case*** that is scheduled to begin on January 28, 2025, or (2) March 31, 2025." (Second Stipulation ¶ 1 (emphasis added).) Therefore, rather than the conclusion of the entire of the Criminal Case, the language of the Second Stipulation centers on whether the January 28 jury trial has concluded. (*Cf. CFTC v. Mashinsky*, No. 23 Civ. 6008 (ER) (S.D.N.Y. July 13, 2023), ECF Doc. # 15 (staying the proceeding "until the completion of the Criminal Case").)

The Opposing Defendants do not dispute that the January 28 jury trial is not taking place but argue, instead, that because the plea agreement covers only two of the seven counts in the Indictment, the "potential need for a jury trial has not been eliminated." (*See* Opposition at 8.) Mere speculation is insufficient to overcome the plain language of the Second Stipulation, which focuses solely on whether the January 28 jury trial has concluded. As the trial is no longer taking place, per the language of the Second Stipulation, the Stay is no longer in place. (*See USA v. Mashinsky et al.*, No. 23 CR 347 (JGK) (S.D.N.Y. Dec. 3, 2024), Docket Entry ("Oral Order of Referral to Probation for Presentence Investigation and Report as to Alexander Mashinsky.").)

The Court must also note that the Opposing Defendants are not signatories to the Second Stipulation; rather, only the Litigation Administrator and the SDNY have signed the document. (*See* Second Stipulation at 7.) Certain of the Defendants were given an opportunity to execute

14

the Second Stipulation but ultimately declined. (*See* 8/27/24 Hr'g Tr. at 130:16–21 (indicating that the Plaintiff reached out to counsel for all Defendants, and while those located in the United States "did not object . . . certain of those defendants did not wish to execute the stipulation"); Omnibus Reply at 4 n.4 (noting that the Litigation Administrator "asked all . . . Defendants . . . to sign the stipulations" but "[n]one did"). *Compare* Second Stipulation (containing only the signatures of counsel to the Litigation Administrator and the SDNY *with Joint Stipulation and Agreed Order Between the Litigation Administrator, the Defendant, and the United States Attorney's Office for the Southern District of New York With Respect to Agreement to Stay the Proceedings*, Adv. Proc. No. 24-03740, ECF Doc. # 11 (containing identical language to stay the adversary proceeding against defendant Darren Yarwood that Yarwood elected to execute, along with the SDNY and the Litigation Administrator, after agreeing to a stay); 8/27/24 Hr'g Tr. at 133:16–134:1 (approving the stipulation that contains a stay "substantially similar" to the Stay, which Yarwood agreed to, and ultimately executed).)

Additionally, it must also be noted that it was at the behest of the SDNY that the Stay had even been extended "until the conclusion of the trial in the Criminal Case," which the SDNY now agrees is no longer needed. (Second Stipulation at 4.) Indeed, it was the SDNY's concern for "asymmetric discovery obligations under the civil and criminal rules" that drove its request in the first instance. (Omnibus Reply ¶ 1.) The SDNY is now consenting to lifting the Stay, suggesting that it no longer has this concern and therefore supports a finding that the Stay expired upon the cancellation of the January 28 jury trial in the Criminal Case.

In light of the foregoing, the Court need not reach the Second Circuit's six-factor balancing test for imposing or extending a stay. *See, e.g.*, *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 99 (2nd Cir. 2012) (indicating that courts in this Circuit consider "1) the

15

extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest" (citations omitted)). As a general principle, however, "[t]he existence of a civil defendant's Fifth Amendment right arising out of a related criminal proceeding . . . does not strip the court in the civil action of its broad discretion to manage its docket." *Id.* at 98–99. Here, the Court notes the strong interest of the Litigation Administrator to move forward with this proceeding to pursue claims for the benefit of the Post-Effective Debtors' estates that have been on hold for one-and-a-half years. Moreover, the Litigation Administrator has made clear that discovery in this Adversary Proceeding will only occur *after* April 8, 2025, the date of Mashinsky's sentencing. (Omnibus Reply ¶ 4.)

Accordingly, for the reasons discussed, the Motion is **GRANTED** and the Stay is lifted as to all Defendants.

### B. The Motion to Intervene

The Motion to Intervene, as discussed, seeks authorization for the TL Customers to intervene in the Adversary Proceeding for the limited purpose of responding to the Lift Stay Motion and any subsequent proposed scheduling procedures. (*See* Motion to Intervene at 7.) In general, Rule 24(a) of the Federal Rules of Civil Procedure provides:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
>
> > (1) is given an unconditional right to intervene by a federal statute; or
> >
> > (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may

16

Pg 17 of 18

> as a practical matter impair or impede the movant's ability to protect its
> interest, unless existing parties adequately represent that interest.

FED. R. CIV. P. 24(a). Meanwhile, section 1109(b) of the Bankruptcy Code states, in relevant part, that "[a] party in interest, including . . . a creditor . . . may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b).

Here, the TL Customers indicate that they take ***no position*** on whether lifting the Stay of the Adversary Proceeding is appropriate at this time. (Motion to Intervene at 2.) They also make clear that their sole concern is whether common issues between the Adversary Proceeding and the Customer Preference Actions will be litigated first in the Adversary Proceeding to the disadvantage of the TL Customers. (*Id.*) The Litigation Administrator, however, has made clear that it will endeavor to coordinate the trial schedules in this Adversary Proceeding with that of the Customer Preference Actions. (Omnibus Reply ¶¶ 16–17.) Any issues raised in responsive motions or answers to the Complaint, the Litigation Administrator maintains, "may be dealt with on a similar timeline with 'phase one' litigation in the [Customer Preference Actions]." (*Id.* ¶ 17.) Meanwhile, the Litigation Administrator also intends to coordinate the adjudication of issues that require fact and expert discovery and are otherwise not properly decided on a motion to dismiss basis "at the appropriate time." (*Id.*)

Given the Litigation Administrator's representations, the Court is satisfied that the TL Customers' concerns, which underlie the Motion to Intervene, will be adequately addressed, foregoing the need for the TL Customers to intervene. Accordingly, the Court **DENIES** the Motion to Intervene.

### III. CONCLUSION

For the reasons discussed, the Court **GRANTS** the Lift Stay Motion and **DENIES** the Motion to Intervene.  The Stay of the Adversary Proceeding is lifted with respect to all Defendants, and Defendants must respond to the Complaint no later than 14 days from entry of this Opinion.

Additionally, in light of the Court's ruling in the Adversary Proceeding, the Litigation Administrator is directed to file a status report in the adversary proceeding (Adv. Proc. No. 24-03740) against defendant Darren Yarwood within 14 days from entry of this Opinion concerning the stay in that proceeding and next steps.

**IT IS SO ORDERED.**

Dated:   January 21, 2025
         New York, New York

               *Martin Glenn*
               MARTIN GLENN
               Chief United States Bankruptcy Judge