Kevin J. O'Brien
**KING & SPALDING LLP**
1185 Avenue of the Americas
New York, New York 10036
Phone: (212) 556-2100
kobrien@kslaw.com

Thaddeus D. Wilson (*pro hac vice*)
**KING & SPALDING LLP**
1180 Peachtree Street, NE
Atlanta, Georgia 30309
Phone: (404) 572-4600
thadwilson@kslaw.com

*Attorneys for Jeremie Beaudry*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC et al.,<br><br>Reorganized Debtors. | Chapter 11<br>Case No. 22-10964-MG<br>(Jointly Administered) |
| MOHSIN Y. MEGHJI, as Representative for the Post-Effective Date Debtors,<br><br>Plaintiff,<br><br>v.<br><br>ALEXANDER MASHINSKY et al.,<br><br>Defendants. | No. 24-ap-03667-MG |
| JEREMIE BEAUDRY,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>RON DEUTSCH, ADRIAN ALISIE, and OREN BLONSTEIN,<br><br>Third-Party Defendants. | |

**JEREMIE BEAUDRY'S RESPONSE IN OPPOSITION TO**
**THIRD-PARTY DEFENDANTS' MOTION TO DISMISS THIRD-PARTY COMPLAINT**

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS .................................................................................................................i

PRELIMINARY STATEMENT .................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

    I.    The Debtor Releases Assert an Affirmative Defense That Cannot Be Properly Resolved on a Motion to Dismiss. ............................................................ 3

    II.    Beaudry's Complaint States a Claim for Contribution. ........................................ 10

CONCLUSION ............................................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbas v. Dixon*,
    480 F.3d 636 (2d Cir. 2007)..................................................................................................10

*Ades v. Deloitte & Touche*,
    No. 90 CIV. 4959 (RWS), 1993 WL 362364 (S.D.N.Y. Sept. 17, 1993) ................................8

*Ainette v. Mkt. Basket Inc.*,
    No. 19CV04506 (DF), 2021 WL 1022590 (S.D.N.Y. Mar. 16, 2021)....................................12

*Amusement Indus., Inc. v. Stern*,
    693 F. Supp. 2d 319 (S.D.N.Y. 2010).........................................................................2, 3, 11

*Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*,
    No. 93 CIV. 5298 LMM RLE, 1996 WL 71507 (S.D.N.Y. Feb. 20, 1996) ..............................8

*Brass v. American Film Technologies*,
    987 F.2d 142 (2d Cir. 1993)....................................................................................................4

*Calcutti v. SBU, Inc.*,
    273 F. Supp. 2d 488 (S.D.N.Y. 2003).....................................................................................6

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)....................................................................................................4

*Chase Manhattan Bank v. Akin, Gump, Strauss, Hauer & Feld LLP*,
    763 N.Y.S.2d 588 (App. Div. 2003) .......................................................................................8

*Clarendon Nat. Ins. Co. v. Hartford Ins. Co.*,
    No. 94 CIV. 5529 (AGS), 1998 WL 230936 (S.D.N.Y. May 8, 1998) ...................................6

*Clarke v. Max Advisors, LLC*,
    235 F. Supp. 2d 130 (N.D.N.Y. 2002).....................................................................................6

*Cortec Indus., Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991).......................................................................................................4

*Edo v. Martiny*,
    No. 15-CV-202 (CBA), 2016 WL 7839337 (E.D.N.Y. Aug. 26, 2016)...................................6

*In re Flushing Hosp. & Med. Ctr.*,
    395 B.R. 229 (Bankr. E.D.N.Y. 2008)..................................................................................10

Page(s)

**Cases Cont.**

*Friedl v. New York*,
    210 F.3d 79 (2d Cir. 2000) ...................................................................................................5

*Friend v. Dibble*,
    124 Misc.2d 151, 475 N.Y.S.2d 765 (Sup. Ct. 1984) ...........................................................8

*In re Granite Partners, L.P.*,
    210 B.R. 508 (Bankr. S.D.N.Y. 1997) ..................................................................................4

*Harrington v. Purdue Pharma L.P.*,
    603 U.S. 204 (2024) ..............................................................................................................7

*Kelly-Brown v. Winfrey*,
    717 F.3d 295 (2d Cir. 2013) ..................................................................................................6

*Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*,
    969 F.2d 1384 (2d Cir. 1992) ................................................................................................5

*LNC Invs., Inc. v. First Fidelity Bank, Nat. Ass'n*,
    935 F.Supp. 1333 (S.D.N.Y. 1996) ...................................................................................2, 4

*Mar-Cone Appliance Parts Co. v. Mangan*,
    879 F. Supp. 2d 344 (W.D.N.Y. 2012) ...............................................................................12

*Michael Grecco Prods., Inc. v. RADesign, Inc.*,
    112 F.4th 144 (2d Cir. 2024) .............................................................................................6, 7

*Raquet v. Braun*,
    90 N.Y.2d 177 (1997) .........................................................................................................11

*Rimu Cap. Ltd. v. Ader*,
    No. 23-CV-05065 (LJL), 2025 WL 1268342 (S.D.N.Y. May 1, 2025) ..............................11

*Rotter v. Leahy*,
    93 F. Supp. 2d 487 (S.D.N.Y. 2000) ....................................................................................8

**Statutes**

CPLR § 1401 ..............................................................................................................................3, 11

CPLR § 1402 ....................................................................................................................................4

N.Y. Gen. Oblig. § 15-108 ...........................................................................................................7, 8

**Rules**

Fed. R. Civ. P. 8 .................................................................................................................6, 10

Fed. R. Evid. 201 ......................................................................................................................5

Fed. R. Civ. P. 12(b)(6) ............................................................................................................4

Jeremie Beaudry respectfully submits this response in opposition to the Motion to Dismiss, Adv. Dkt. No. 107 (the "Motion" or "Mot."). The Motion seeks to dismiss Beaudry's Third-Party Complaint in this case, Adv. Dkt. No. 63 ("Beaudry's Complaint" or "TPC"), which alleges claims for contribution against Defendants Ron Deutsch, Adrian Alisie, and Oren Blonstein (the "Third-Party Defendants"). For the reasons below, the Motion should be denied.

## PRELIMINARY STATEMENT

In sweeping, shotgun fashion, the Litigation Administrator ("Plaintiff") brings fifteen separate counts against Beaudry, including numerous claims for willful misconduct, gross negligence, and fraud under "breach of fiduciary duty" and tort theories predicated almost entirely on Beaudry's official titles with Celsius. *See* Compl., Adv. Dkt. No. 1. Aided by the Third-Party Defendants—who remain officers of Celsius since it emerged from bankruptcy—Plaintiff seeks to impose liability on Beaudry for acts and omissions that, as alleged, necessarily occurred under the direction or supervision of others since Beaudry was demoted from his role as an officer of Celsius in January 2021 and had left the company altogether by September 2021. *See generally* TPC. As a result, many of the acts and omissions alleged in Plaintiff's Complaint must properly be attributed to the misconduct of the Third-Party Defendants, who served in roles of General Counsel and Chief Compliance Officers at Celsius after January 2021. Even more egregious, Plaintiff hopes to lay blame on Beaudry for acts and omissions that, as alleged, unequivocally occurred after September 2021 when Beaudry was no longer even employed by Celsius.

Careless and ambiguous pleading by Plaintiff, unfortunately, has created consequences for the Third-Party Defendants—namely, the Complaint gives rise to direct contribution claims that Beaudry now asserts against them. Because Plaintiff alleges several generic acts and omissions at a variety of different times, the Complaint encompasses conduct that cannot be Beaudry's based

1

on timing alone. As such, to the extent Beaudry would be held liable for the torts brought against him, he is entitled to "seek contribution against other joint tortfeasors" that "had a part in causing or augmenting the injury" to Celsius that Plaintiff contends was caused by Beaudry. (Mot. at 21 (citing *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 319, 324 (S.D.N.Y. 2010))).

The Third-Party Defendants' Motion fails to provide any viable basis for the Court to dismiss Beaudry's Complaint.

*First*, the "Debtor Releases" the Motion describes and relies on are not properly considered on a motion to dismiss. As an initial matter, the Third-Party Defendants' Motion completely omits the express terms of the Debtor Releases which necessarily require a finding that the Third-Party Defendants did not commit willful misconduct, gross negligence, or actual fraud in order for those releases to be effective. Although the Motion argues that the Debtor Releases exculpate the Third-Party Defendants from liability such that "no claim can possibly be asserted against them," (Mot. at 7), the express terms of those releases demonstrate the opposite. Whether the exceptions in the Debtor Releases for fraud, willful misconduct, and gross negligence apply here—and would render the Debtor Releases irrelevant—can only be resolved by the trier of fact after the parties have completed discovery.

Even if the application of the Debtor Releases did not require this factual determination, however, the Debtor Releases are neither alleged in the TPC nor incorporated by reference. Thus, the Court should not take judicial notice of the Debtor Releases at all. But if it does, the fact of the existence of the Debtor Releases is in no way dispositive. The Federal Rules of Evidence preclude the Court from assuming the enforceability of the Debtor Releases to bar claims for contribution, which is disputed here, or interpreting them to assess the viability of the Third-Party Defendants' unpleaded affirmative defense of release. These arguments turn on issues of fact not presented by

2

Beaudry's Complaint.

*Second*, Beaudry has sufficiently pleaded his contribution claims against the Third-Party Defendants under New York law. In essence, Plaintiff alleges Beaudry did nothing to stop the acts and omissions of Defendants Alex Mashinsky and Roni Cohen-Pavon and—essentially by virtue of his titles alone—Beaudry must be held liable for their misconduct. If Plaintiff's theory somehow prevails, then it will be equally true that the Third-Party Defendants, each of whom succeeded Beaudry and shared the same titles and roles, did not stop Mashinsky and Cohen-Pavon either. To the extent Plaintiff seeks to hold Beaudry liable for acts and omissions that occurred after he was no longer an officer of Celsius—when the Third-Party Defendants were in the officer roles Beaudry previously held—Beaudry has legal rights of contribution to hold the Third-Party Defendants to "pay 'more than [his] fair share of a judgment, as apportioned by the fact finder in terms of relative culpability'" for post-demotion liability that he simply cannot have. (Mot. at 21 (citing *Amusement Indus.,* 693 F. Supp. at 324)).

## ARGUMENT

### I. The Debtor Releases Assert an Affirmative Defense That Cannot Be Properly Resolved on a Motion to Dismiss.

Contribution claims under New York law are governed by statute:

> [T]wo or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought.

CPLR § 1401. The amount of contribution to which a person may be entitled is "the excess paid by him over and above his equitable share of the judgment recovered by the injured party; but no person shall be required to contribute an amount greater than his equitable share . . . to be determined in accordance with the relative culpability of each person liable for contribution."

3

CPLR § 1402. In New York, an "action for contribution may be maintained between concurrent, successive, independent, alternative, and even intentional tort-feasors, who have caused the 'same injury' to plaintiff." *LNC Invs., Inc. v. First Fidelity Bank, Nat. Ass'n*, 935 F.Supp. 1333, 1346 (S.D.N.Y. 1996) (internal quotations omitted).

The Third-Party Defendants do not dispute the applicability of the contribution statute, generally, to Beaudry's claims against them. Instead, they assert an affirmative defense: that Beaudry's contribution claims cannot be maintained because they are an "end-run around the Plan and the broad releases" granted to the Third-Party Defendants by the Debtors only—not releases by other individuals. (Mot. at 6). By bringing contribution claims, the Third-Party Defendants argue, Beaudry is "effectively asserting derivative claims, not direct claims," which rightly belong to the estate (and thus, the Litigation Administrator). (*Id.* at 16–17). The crux of their argument is that the Debtors have "exclusive authority over Beaudry's contribution claim," because it is "based on conduct yielding injury to the estate" and is therefore "extinguished" by the Debtor Releases. (*Id.* at 17–18 (citing *In re Granite Partners, L.P.*, 210 B.R. 508, 516 (Bankr. S.D.N.Y. 1997)).)

This argument fails at the threshold as a matter of procedural posture. On a motion to dismiss pursuant to Rule 12(b)(6), the Court limits its consideration to: (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken, *see Brass v. American Film Technologies*, 987 F.2d 142, 150 (2d Cir. 1993); and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.*, documents that are "integral" to the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991). If a document is not within these categories, for the purposes of a motion to dismiss, the court must "exclude the additional material

4

and decide the motion on the complaint alone" or convert motion into one for summary judgment. *Friedl v. New York*, 210 F.3d 79, 83 (2d Cir. 2000) (explaining that the "conversion requirement is strictly enforced whenever there is a 'legitimate possibility' that the district court relied on material outside the complaint in ruling on the motion").

The Debtor Releases that the Third-Party Defendants urge the Court to consider do not fall within the four categories of pleading materials that are properly considered by the Court at this stage. The Debtor Releases are neither integral to the TPC, nor mentioned in, attached to, or incorporated by reference into the TPC. Instead, in a footnote, the Third-Party Defendants ask the Court to take judicial notice of the Debtor Releases since they have been filed on a court docket. (Mot. at 15 n.4) (citing Fed. R. Evid. 201).

However, the Court should not take judicial notice of the Debtor Releases here. The Federal Rules of Evidence permit a court to judicially notice a fact "not subject to reasonable dispute" because it is either "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). As to court filings, the Second Circuit has stated that a "court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) (holding that the findings contained in a bankruptcy court order were an improper subject for judicial notice).

The Third-Party Defendants rely on the Debtor Releases for the truth of the contents therein and effectively ask this Court to determine their scope and enforceability. But doing so at this stage violates Fed. R. Evid. 201, since taking judicial notice of factual findings is inappropriate to resolve substantive issues on a motion to dismiss. *See, e.g., Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488,

5

498 (S.D.N.Y. 2003) (declining to take judicial notice of release offered to bar third-party plaintiff's claim for contribution against joint tortfeasors); *see also Edo v. Martiny*, No. 15-CV-202 (CBA), 2016 WL 7839337, at *2 (E.D.N.Y. Aug. 26, 2016), *rep. and rec. adopted*, No. 15-CV-202 (CBA) (SMG), 2017 WL 785653 (E.D.N.Y. Mar. 1, 2017) (declining to take judicial notice of release). The Court should decide the Motion, and the sufficiency of the contribution claims, based on the allegations in TPC alone.

Even if the Court properly took judicial notice of the existence of the Debtor Releases, doing so would do nothing to warrant dismissal of Beaudry's Complaint. A valid "release" is an affirmative defense, *see* Fed. R. Civ. P. 8(c)(1), that must be pleaded in the defendant's answer, and the ultimate burden of proving the defense by a preponderance of the evidence rests on the defendant. *See Clarendon Nat. Ins. Co. v. Hartford Ins. Co.*, No. 94 CIV. 5529 (AGS), 1998 WL 230936, at *2 (S.D.N.Y. May 8, 1998); *see also Clarke v. Max Advisors, LLC*, 235 F. Supp. 2d 130, 144 (N.D.N.Y. 2002) ("Release is an affirmative defense which must be proven by the party asserting it."). Because affirmative defenses often require consideration of facts outside of the complaint, they are typically "inappropriate to resolve on a motion to dismiss." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013). Rather, affirmative defenses may be adjudicated at the motion to dismiss stage in the litigation only "where the facts necessary to establish the defense are evident on the face of the complaint." *Id.*; *see also Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 153 (2d Cir. 2024) (declining to consider statute of limitations defense on motion to dismiss when doing so would have required findings of facts outside the complaint).

To establish that a release of a tortfeasor bars claims for contribution by joint tortfeasors, the purportedly released tortfeasor must show more than the existence of the release; it must show that the release validly applies to the contribution claims at issue. Here, the Third-Party Defendants

6

do not, and cannot, contend that the Debtor Releases—which purport to release the Debtors' claims—facially apply to Beaudry's contribution claims (*i.e.*, the claims of a non-debtor against other non-debtors).[1] They argue instead that contribution claims are "derivative" and thereby swept into the Debtor Releases. The Motion does not cite authority for this argument but asks the Court to extrapolate the Third-Party Defendants' theory from generic "derivative claim" case law that has nothing to do with the contribution claims at issue here—all while ***ignoring*** the New York statute that specifically governs the effect of releases on contribution claims.[2] The effect of a settlement or release on non-settling defendants is governed by N.Y. Gen. Oblig. § 15-108, which provides that a release may extinguish the non-settling defendant's contribution claim ***only if*** it is a release "within the scope" of the statute and is "given in good faith." *Id.* The Third-Party Defendants have not—and on a motion to dismiss could not—establish either of these things.

A release falls "within the scope" of Section 15-108 when, among other things, "the plaintiff or claimant [here, Celsius] receives, as part of the agreement, monetary consideration greater than one dollar." N.Y. Gen. Oblig. § 15-108(d)(1). The Third-Party Defendants have not even argued, let alone submitted judicially noticeable evidence, that "monetary consideration" was paid for their releases. *Id.* Indeed, neither the Plan nor any other document filed in the Debtors' cases gives rise to any basis to infer a "monetary" payment. On the contrary, the Third-Party Defendants highlight only their alleged ***non-monetary*** consideration in the form of "cooperation" with investigations and "assistance" with the bankruptcy process (*e.g.*, Mot. at 9), which is insufficient to bring the Debtor Releases "within the scope" of Section 15-108. *See, e.g.*, *Bank*

---

[1] If the Third-Party Releases were so broad, it is difficult to conceive how they could be reconciled with the U.S. Supreme Court's ruling in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024).

[2] The Plan expressly provides that its provisions, including the Third-Party Releases, are governed by New York law. *See* Plan Art. I.D.

7

*Brussels Lambert v. Chase Manhattan Bank, N.A.*, No. 93 CIV. 5298 LMM RLE, 1996 WL 71507, at *4 (S.D.N.Y. Feb. 20, 1996) ("The section does not mention non-monetary consideration. On its face, the section appears to refer only to specific monetary payments.").

"The good faith requirement . . . is to assure that the injured party will not collusively release one wrongdoer for a small amount in return for the promise of that wrongdoer to cooperate improperly with the injured person in an attempt to extract from the remaining wrongdoers more than the equitable share of the damages attributable to them. The requirement permits the Court to determine whether the transaction was collusive." *Rotter v. Leahy*, 93 F. Supp. 2d 487, 495 (S.D.N.Y. 2000) (citing *Friend v. Dibble*, 124 Misc.2d 151, 153, 475 N.Y.S.2d 765, 766 (Sup. Ct. 1984)). Analysis of the good-faith requirement under Section 15-108 "depends upon all the facts alleged, not just upon the amount of the settlement." *Ades v. Deloitte & Touche*, No. 90 CIV. 4959 (RWS), 1993 WL 362364, at *18 (S.D.N.Y. Sept. 17, 1993); *see also Chase Manhattan Bank v. Akin, Gump, Strauss, Hauer & Feld LLP*, 763 N.Y.S.2d 588, 591 (App. Div. 2003) (discussing procedural background where court denied motion to dismiss contribution claims on the basis that the good faith of the settlement was at issue).

Here, there is nothing in the TPC or in any judicially noticeable documents—the record on which the Motion must turn—that could allow the Court to make any determination of the good faith requirement in the context of Section 15-108. To the contrary, the TPC alleges facts demonstrating the opposite of good faith. *See, e.g.*, Adv. Dkt. No. 63 ¶ 39 (alleging it was Deutsch, not Beaudry, who was "aware that Celsius was artificially inflating the CEL token's market price" based on conversations that occurred between Cohen-Pavon and Mashinsky from October 2021 through January 2022"), ¶¶ 47–51 (alleging it was Blonstein, not Beaudry, who "took no actions to institute 'proper oversight procedures for the trading desk' or to bring traders within their risk

8

limits" in January 2022, and who was working directly with Mashinsky and would have been aware of his alleged misconduct), ¶¶ 57–61 (alleging it was Alisie, not Beaudry, who was responsible for auditing Celsius' activities, had direct knowledge that Mashinsky "circumvented some controls" and bypassed processes to direct trades "inconsistent with Celsius's directionally neutral strategy[,]" and ""failed to take appropriate actions to manage the[] business . . . [f]rom at least as early as 2021, through 2022[.]").

Most importantly, the complete language of the Debtor Releases—which the Third-Party Defendants conspicuously fail to include in the Motion—contains express exceptions, including:

> Notwithstanding anything to the contrary in the foregoing, the releases set forth above ***do not release*** any [claims for] . . . (d) actual fraud, willful misconduct, or gross negligence as determined by a Final Order.

*See* Plan Art. VIII.D (emphasis added). Claims premised on allegations of "actual fraud," "willful misconduct," and "gross negligence" are exactly what the Litigation Administrator asserts against Beaudry and, thus, what Beaudry seeks contribution for from the Third-Party Defendants.[3] *See, e.g.*, Adv. Dkt. No. 1 ¶ 178 ("The D&O Defendants breached their fiduciary duty to Celsius . . . and the other Debtors, as well as their creditors, by acting in bad faith, without exercising the care, skill, and diligence that an ordinarily careful and prudent person would exercise in similar circumstances . . . and by acting with negligence, gross negligence, and reckless and irrational indifference to the interests of Celsius . . . and the other Debtors."); *see also id.* ¶¶ 281, 284, 309 & 320. As a result, whether the Debtor Releases are effective must be determined after a full evidentiary record is developed and only after the Third-Party Defendants prove they did not engage in willful misconduct, commit gross negligence or commit actual fraud. Simply

---

[3] The Trustee alleges fraud-related claims, including "Conspiracy to Fraudulently Misrepresent" in Count IX and Violation of New Jersey Consumer Fraud Act in Count XII. Adv. Dkt. No. 63.

put, a full factual record must be established before the trier of fact can determine whether these particular Debtor Releases apply to and exculpate the Third-Party Defendants.

Determining the breadth of written materials that make up the Debtor Releases, evaluating the full scope of their provisions and exceptions, understanding the conditions under which the releases were given in "good faith" by the Third-Party Defendants, and whether "monetary consideration" was given to Celsius in exchange, are substantive and factual issues that cannot be resolved on the pleadings. *See also In re Flushing Hosp. & Med. Ctr.*, 395 B.R. 229, 237 (Bankr. E.D.N.Y. 2008) (denying summary judgment where questions of material fact prevented the Court from determining on whether crossclaims were barred by the exculpation provisions and releases in Chapter 11 Plan). And again, Beaudry is not required under Rule 8 to plead in anticipation of the Third-Party Defendants' affirmative defenses. *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007) ("[P]leading requirements . . . do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses."). At a minimum, because the facts the Court needs to decide the issues going directly to the scope, efficacy and applicability of the Debtor Releases do not appear on the face of the TPC and because the Debtor Releases expressly carve out willful misconduct, gross negligence and actual fraud (meaning that the Court cannot decide those without a full factual record), the Third-Party Defendants' putative affirmative defense of release cannot serve as basis for dismissal.

**II.    Beaudry's Complaint States a Claim for Contribution.**

The Third-Party Defendants also argue that Beaudry's contribution claims are not pleaded with adequate particularity or factual detail. They claim that Beaudry does not "point to any specific actions or inaction on the part of the Third-Party Defendants . . . to suggest they somehow failed to properly exercise their oversight obligations." (Mot. at 7). Not so.

10

A claim for contribution exists when (1) two or more people are (2) subject to liability for the same injury. *See Rimu Cap. Ltd. v. Ader*, No. 23-CV-05065 (LJL), 2025 WL 1268342, at *31 (S.D.N.Y. May 1, 2025) (citing CPLR § 1401). "The crucial element in allowing a claim for contribution to proceed is that 'the breach of duty by the contributing party must have had a part in causing or augmenting the injury for which contribution is sought.'" *Amusement Indus.*, 693 F. Supp. 2d at 324 (quoting *Raquet v. Braun*, 90 N.Y.2d 177, 183 (1997)).

Beaudry's Complaint satisfies these requirements. The TPC plainly alleges that the Third-Party Defendants "owed duties to Celsius when the schemes described in [Plaintiff]'s Complaint transpired." Adv. Dkt. No. 63 ¶¶ 12–13, 19. Specifically, it states that Deutsch, Alisie, and Blonstein were "officers and directors" of Celsius and "were in critical decision-making roles during the exact time period when Plaintiff claims the wrongful conduct giving rise to Celsius's bankruptcy occurred." *Id.* ¶ 20. It also describes each Third-Party Defendant's role at Celsius that gives rise to the duties owed. *Id.* ¶¶ 17–21; *see also, e.g., id.* ¶ 20 (alleging Deutsch owed duties to Celsius as its General Counsel), *id.* ¶ 45 (alleging Blonstein owed duties to Celsius as its Chief Compliance Officer), *id.* ¶ 54 (alleging Alisie owed duties to Celsius and had direct knowledge of its financial affairs as its Head of Internal Audit). Finally, Beaudry's Complaint sets out a claim for breach of fiduciary duty—the underlying tort at the heart of Plaintiff's claims against Beaudry—as to each Third-Party Defendants:

> Deutsch, Alisie, and Blonstein owed fiduciary duties to Celsius to exercise the care, skill, and diligence that an ordinarily careful and prudent person would use when carrying out the functions exercised by the directors and officers in relation to the companies they serve. This duty included, among other things, the obligations to acquire and maintain sufficient knowledge to enable them to discharge their duties as directors and officers, and to act on an informed basis after considering relevant and reasonably available information.

11

*Id.* ¶ 69; *see also* ¶¶ 71–72 (describing the causes of action brought against Beaudry for which he denies sole liability and alleges the Third-Party Defendants should be held jointly liable).

The Motion takes issue with Beaudry's "framing" of the factual timeline and criticizes Beaudry for implying "that Celsius's purported market manipulation was limited to the October 2021 to January 2022 timeframe." (Mot. at 23 n.6) However, the Third-Party Defendants' attempt to read what is "implied" between the lines is contradicted by reading the allegations as Beaudry has pleaded them: his Complaint makes clear that it incorporates by reference the "actions that form the basis of the allegations against Beaudry" in Counts I, II, V, VI, VII, IX, X, XI, XII of Plaintiff's Complaint, and alleges that it is the Third-Party Defendants who must be held jointly liable as to the "***conduct alleged [by the Litigation Administrator] that occurred after February 2021***[.]" *Id.* ¶¶ 71–72; *see also Ainette v. Mkt. Basket Inc.*, No. 19CV04506 (DF), 2021 WL 1022590, at *8 (S.D.N.Y. Mar. 16, 2021) (contribution "claims will lie whether or not the culpable parties are allegedly liable for the injury under same or different theories, and whether or not the party from whom contribution is sought is allegedly responsible for the injury as a concurrent, successive, independent, alternative, or even intentional tort-feasor").

Taking the facts alleged in Beaudry's Complaint as true, from and after February 2021—more than a year before Celsius' collapse and bankruptcy due to "exogenous" factors (as the Third-Party Defendants put it)—the Third-Party Defendants were the officers at Celsius who, if any wrongful conduct occurred (*i.e.*, the willful misconduct, gross negligence, and actual fraud the Litigation Administrator alleges) caused or augmented Celsius's alleged injuries and should bear that responsibility, not Beaudry.

The Motion also complains that Beaudry's allegations are conclusory. (Mot. at 23–24) However, the incorporation by reference of allegations from another pleading to form the grounds

12

for contribution claims in a third-party complaint is permissible. *See, e.g.*, *Mar-Cone Appliance Parts Co. v. Mangan*, 879 F. Supp. 2d 344, 366 (W.D.N.Y. 2012). Thus, the allegations in the TPC would fall short only to the extent that the allegations in Plaintiff's Complaint are "woefully insufficient" as well. Beaudry's Complaint sufficiently alleges the elements of a contribution claim premised on the Third-Party Defendants' breach of their fiduciary duties to Celsius.

## CONCLUSION

For these reasons, the Third-Party Defendants' Motion to Dismiss should be denied.[4]

Dated: New York, New York
May 26, 2025

*/s/ Kevin J. O'Brien*
Kevin J. O'Brien
**KING & SPALDING LLP**
1185 Avenue of the Americas
New York, New York 10036
Phone: (212) 556-2100
kobrien@kslaw.com

Thaddeus D. Wilson (*pro hac vice*)
**KING & SPALDING LLP**
1180 Peachtree Street, NE
Atlanta, Georgia 30309
Phone: (404) 572-4600
thadwilson@kslaw.com

*Attorneys for Jeremie Beaudry*

---

[4] Although Beaudry does not believe it is necessary, should the Court disagree, then Beaudry respectfully seeks leave to amend his Third-Party Complaint to further detail the misconduct that the Litigation Administrator alleges the "D&O Defendants" perpetrated after February 2021, when Beaudry no longer owed director or officer duties to Celsius, but the Third-Party Defendants did.

13