# VAN TOL LAW PLLC

www.vantol-law.com

199 8th Avenue, Suite B3                                                2835 Route 20
Brooklyn, New York 11215                                         Nassau, New York 12123

March 13, 2026

**VIA ECF**

Honorable Chief Judge Martin Glenn
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Courtroom 523
New York, New York 10004-1408

Re:     *Meghji v. Mashinsky et al.*, Adv. Proc. No. 24-03667 (MG)

Dear Judge Glenn:

This firm represents Defendants Shlomi Daniel Leon ("Leon"), Aliza Landes ("Landes") and
Alchemy Capital Partners LP ("Alchemy" and, together with Leon and Landes, "Defendants") in
the above proceeding (the "Adversary Proceeding").  The Litigation Administrator and Defendants
have reached an impasse on the discovery issues set forth below and, through the submission of
simultaneous letter briefs, they seek a ruling from the Court.

## Discovery Issues in Dispute

Defendants have produced thousands of documents in response to the Litigation Administrator's
requests for production (with production ongoing).  Defendants have also provided responses to
the Litigation Administrator's request for admissions and the bulk of his interrogatories, after the
latter were narrowed by agreement.  Even though the parties have been able to resolve most issues
consensually, they have a dispute on two narrow questions: (1) whether Defendants must produce
information and/or documents relating to the subsequent transfer of the proceeds from the
Alchemy Loan (as that term is defined in the Amended Complaint); (2) whether Defendants must
produce information and/or documents (including bank statements) relating to their general
financial condition and ability to pay any judgment against them.

For the reasons discussed below, Defendants respectfully request that the Court deny the Litigation
Administrator's request for such information and documents.

1

## Argument

**I.    Any Subsequent Transfer of the Alchemy Loan Proceeds Is Not Relevant to the Claims and Defenses in the Adversary Proceeding**

As the Court may recall, the parties raised the overall issue of subsequent transfers in earlier letters. *See* Dkt. Nos. 171 and 174.  At the hearing on January 29, 2026 (the "January 29 Hearing"), the Court pointed out that the subsequent transfers (*i.e.*, sales) of CEL tokens that were withdrawn by Defendants are potentially relevant to the damages issues.  As a result, Defendants provided the Litigation Administrator with detailed information and records showing any such sales of withdrawn tokens by Defendants.

At the January 29 Hearing, the Court did not decide the issue of whether Defendants must produce information and/or documents concerning any subsequent transfer of the Alchemy Loan proceeds. *See* **Exhibit 1** (Jan. 29 Hrg. Tr., at 54-55.)  By way of background, Counts XXVI and XXVII of the Amended Complaint seek the avoidance of the Alchemy Loan as an actual or constructive fraudulent transfer.  Defendants have objected to discovery on the subsequent transfer of the Alchemy Loan proceeds as not relevant to any claim or defense in the Adversary Proceeding.

In his January 23, 2026 letter to the Court (the "January 23 Letter"), the Litigation Administrator cited to 11 U.S.C. § 550(a).  Dkt. No. 171, at 2.  However, Section 550(a) only applies to the recovery of subsequent transfers *if* the initial transfer is avoided under Section 547 or Section 548 (among others).  11 U.S.C. § 550(a); *see also In re Sec. Inv. Protection Corp. v. Bernard L. Madoff Inv. Sec., LLC*, 501 B.R. 26, 29-30 (Bankr. S.D.N.Y 2013) (noting well-established distinction between avoidance under Section 548 and recovery under Section 550); *In re Caremerica, Inc.*, 409 B.R. 737, 758 (Bankr. E.D.N.C. 2009) (bifurcating claims under Sections 547 and 548 from later adjudication of claims under Section 550).  Therefore, if the Litigation Administrator prevails on its fraudulent transfer claims against Alchemy, he may then seek to recover from subsequent transferees and the related discovery regarding those transfers (under Rule 69, for example) would be proper.  *See United States v. BlueWave Healthcare Consultants, Inc.*, 2021 WL 8084309, at *1 (D.S.C. Dec. 6, 2021) (noting bankruptcy court's holding that the parties should engage in post-judgment discovery on subsequent transfers).  But, at this stage, it is premature to allow discovery relating to subsequent transfers by Alchemy on the basis of Section 550(a).

The Litigation Administrator has also asserted that discovery concerning subsequent transfers is relevant to a showing of "personal enrichment and self-dealing" in connection with their breach of fiduciary duty claims and "the badges of fraud to indicate fraudulent transfer." Dkt. No. 171, at 2.  However, the Litigation Administrator has not alleged a breach of fiduciary duty as a result of the Alchemy Loan.  Also, the only relevant conduct for the actual fraudulent transfer claim against Alchemy is the conduct of the transferor, Celsius.  *See, e.g.*, *In re Le Cafe Creme, Ltd.*, 244 B.R. 221, 239 (Bankr. S.D.N.Y. 2000) ("It is the intent of the transferor and not that of the transferee that is dispositive.").  In other words, the Litigation Administrator does not need to show that there was a subsequent transfer by Alchemy to prevail on his claim of actual fraudulent transfer.

The January 23 Letter did not cite any case law on this issue, but, in correspondence with the parties, the Litigation Administrator cited two cases: *Coan v. Dunne*, 2018 WL 6616820 (D. Conn. Dec. 18, 2018), and *In re Bernard L Madoff Inv. Sec. LLC*, 445 B.R. 206 (Bankr. S.D.N.Y. 2011). Neither case is on point.  In *Madoff,* the subsequent transferees were already parties to the case

and thus the discovery was relevant to the claims against those parties.  Here, the Litigation Administrator has not named any subsequent transferees as parties.  The Litigation Administrator cited *Coan* for its purported holding that information relating to subsequent transfers is relevant to a fraudulent transfer claim, but, in that case, the court was construing the Connecticut fraudulent transfer statute and held that it was relevant whether the defendant had returned any of the funds to the debtor post-petition.  *See* 2018 WL 6616820, at *7.  Here, there is no claim under the Connecticut statute and no allegation that the subject funds were returned to Celsius.  In any event, the Litigation Administrator would already have evidence of such returned funds in his possession.

At the January 29 Hearing, the Litigation Administrator cited another case, *E-Corp. v. Pacificspan, LLC*, 2021 WL 9597883 (D. Ariz. Sept. 28, 2021), in arguing for the production of subsequent transfer discovery.  *See* Ex. 1, at 30.  *E-Corp* did not involve any claims under the Bankruptcy Code, and instead it was an action under the Arizona state fraudulent transfer statute.  *See* 2021 WL 9597883 at *2.  *E-Corp* is also distinguishable because the plaintiff in that case sought discovery relating to transfers to defendants already named in the action, not unknown subsequent transferees.  *See, e.g., id.* at *3.  Thus, *E-Corp* does not apply here.

More recently, in email correspondence between the parties, the Litigator Administrator cited a final case, *In re Manshul Const. Corp.*, 2000 WL 1228866 (S.D.N.Y. Aug. 30, 2000), in support of his request for discovery on subsequent transfers.  As with the Litigation Administrator's other cases, *Manshul* is distinguishable from this case.  The Litigation Administrator cited *Manshul* for the proposition that "the transfer of funds from the debtor, through the debtor's president and sole shareholder, to his wife, who in turn placed those assets in an offshore trust[,] evidenced actual fraudulent intent and was a badge of fraud." **Exhibit 2** (Email dated Feb. 22, 2026).  The *Manshul* court noted that one of the relevant badges of fraud is the "***transferor's*** retention of possession, benefits, or use of the property transferred."  2000 WL 1228866, at *48 (emphasis added).  Accordingly, the focus is on whether **Celsius** retained the possession, benefits, or use of the property transferred.  The subsequent transfer by the initial transferee (*i.e.*, Alchemy) is not a badge of actual fraud.  Moreover, *Manshul* is different from this matter because it does not involve the issue of whether discovery regarding a subsequent transfer to an unknown transferee is relevant for discovery purposes.  The *Manshul* decision was issued following a bench trial after the debtor's wife had been identified as a subsequent transferee and the evidence on the subsequent transfer was already before the court.  That is not the case here.

In sum, the Litigation Administrator has not cited any on-point authority for its requests.  Under the circumstances, Defendants respectfully submit that discovery relating to subsequent transfers by Alchemy should be deferred until such time as there is a judgment against Alchemy.

II.     **Discovery Regarding Defendants' General Financial Condition and Ability to Pay a Judgment Should Not Be Permitted**

In addition to interrogatories seeking information about any financial transactions involving Celsius, the Litigation Administrator has propounded interrogatories requesting information about Defendants' financial condition generally (not related to Celsius transactions), such as (1) the identification of all cryptocurrency wallets; (2) any trusts; and (3) any cryptocurrency backed loans.  *See* **Exhibit 3** (excerpts containing Leon Interrogatory Nos. 2, 7, 12; Landes Interrogatory Nos. 3, 8 and 13; Alchemy Interrogatory Nos. 4, 10).  Because they are not tied to the claims and defenses

in the Adversary Proceeding (or even to Celsius), the only purpose of such interrogatories is to determine the state of Defendants' finances and whether Defendants can satisfy a judgment against them. Defendants have repeatedly objected to the foregoing interrogatories as well as requests for production on the same topic.

Consistent with those objections, Defendants produced documents on February 24, 2026 that Mr. Leon had previously provided to the SEC, but they withheld a few bank records that were in the SEC production. *See* **Exhibit 4** (Email exchange dated Feb. 24, 2026 and March 3, 2026). Those bank records were a handful of documents in a production made up of thousands of documents. In response to the Litigation Administrator's position that the bank records are responsive to his requests, I pointed out that such documents are not relevant to the claims and defenses in this Adversary Proceeding and are not the proper subject of pre-judgment discovery. *See id.* The Court should also note that the Litigation Administrator's discovery requests to Defendants do not seek bank records generally, other than information and documents relating to trusts. Therefore, the Litigation Administrator request for bank records is new.

Shortly after the production on February 24, I determined that a non-responsive bank record had been inadvertently produced and I asked counsel to destroy the document. *See* **Exhibit 5** (Email dated Feb. 27, 2026).[1] The Litigation Administrator agreed to not review the document until the issues relating to its responsiveness are resolved. *See* Ex. 4.

Despite multiple email exchanges and "meet and confer" discussions, the Litigation Administrator has not articulated any basis for its stance that documents regarding Defendants' financial situation are relevant. Nor has the Litigation Administrator amended his discovery requests to encompass bank records other than those relating to trusts.

The case law is clear that a plaintiff cannot take pre-judgment discovery on a defendant's means to pay a subsequent judgment. Federal courts "generally do not allow pre-judgment discovery regarding a defendant's financial condition or ability to satisfy a judgment . . . on the grounds that such discovery is not relevant to the parties' claims or defenses and is not reasonably calculated to lead to the discovery of admissible evidence." *Insured Advoc. Grp., LLC v. Spartan Servs. Corp.*, 2024 WL 4893580, at *3 (S.D.N.Y. Nov. 26, 2024) (citation omitted); *see also Cargill Fin. Servs. Int'l, Inc. v. Barshchovskiy*, 2025 WL 522108, at *8, n.3 (S.D.N.Y. Feb. 18, 2025) ("Courts disfavor discovery into assets before judgment is entered."); *Vincent v. Money Store*, 2012 WL 6622707, at *1 (S.D.N.Y. Dec. 20, 2012) (describing pre-judgment discovery of assets as an "extraordinary remedy"). The same rule should apply here, especially given the privacy interests of Mr. Leon and Ms. Landes.

I anticipate that the Litigation Administrator will argue that Defendants are required to produce the bank records (even if they are not otherwise responsive) simply because they were included in Mr. Leon's SEC production and the Litigation Administrator has requested all documents produced to any government agency. This issue also came up at the January 29 Hearing and the Court noted that it was not yet ruling on whether the production of documents to the SEC means that they must be produced to the Litigation Administrator. *See* Ex. 1, at 82-83.

---

[1] Without revealing the contents of the inadvertently produced document, I can also advise the Court that it is from October 2022, which is beyond the agreed-upon cut-off date for document production.

4

As an initial matter, the Litigation Administrator has not shown how documents that were produced to the SEC—but are otherwise not responsive to the discovery requests in this Adversary Proceeding—have any relevance to the claims or defenses here.  Parties may produce documents to government agencies for a variety of reasons that have nothing to do with the claims in a civil litigation.  Moreover, a rule establishing that the production of documents to a government agency *ipso facto* makes them fair game for discovery in a civil action would have a chilling effect on investigations and a party's willingness to cooperate fully.  Instead, Defendants respectfully urge the Court to follow the line of cases holding that the production of documents to a government agency does not, absent some other showing of relevance, require the production of those documents in civil litigation.  *See, e.g.*, *In re Tenaris S.A. Secs. Litig.*, 2022 WL 905125, at *3-4 (E.D.N.Y. Mar. 28, 2022) (denying motion to compel production in response to document request where party sought "every piece of paper turned over to government investigators during the investigations"); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 2016 WL 6779901, at *3 (S.D.N.Y. Nov. 16, 2016) (denying motion to compel production in response broad request for documents produced to regulators and noting that: "Plaintiffs' entire relevancy argument hinges on a general contention that every communication and work product related to the regulatory investigations is 'likely' to contain additional relevant information.  But that sort of conclusory claim is insufficient to support such an expansive discovery request."); *New Jersey Carpenters Health Fund v. DLJ Mort. Capital, Inc.*, 2012 WL 13135408, at *1 (S.D.N.Y. Mar. 2, 2012) ("Plaintiffs continue to be free to seek specific information, but its request that says 'you gave some documents to the government concerning another investigation, so give them to me' is DENIED.").

*   *   *   *   *

For these reasons, Defendants respectfully request that the Court hold that (1) Defendants are not required to produce information or documents relating to any subsequent transfers of the Alchemy Loan proceeds; and (2) Defendants are not required to produce information or documents relating to their general financial condition, including the information sought in the specific interrogatories identified above and the recently requested bank records.

Respectfully submitted,

*Pieter Van Tol*

Pieter Van Tol

pvantol@vantol-law.com
917-514-9464

Enc.

Cc:     Counsel of record

5