**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CELSIUS NETWORK LLC et al.,<br><br>      Reorganized Debtors. | **FOR PUBLICATION**<br><br>Chapter 11<br>Case No. 22-10964-MG<br>(Jointly Administered) |
| MOHSIN Y. MEGHJI, as Representative for the Post-Effective Date Debtors,<br><br>      Plaintiff,<br><br>      v.<br><br>ALEXANDER MASHINSKY et al.,<br><br>      Defendants. | Adv. Pro. 24 -03667-MG |
| JEREMIE BEAUDRY,<br><br>      Third-Party Plaintiff,<br><br>      v.<br><br>RON DEUTSCH, ADRIAN ALISIE, and OREN BLONSTEIN,<br><br>      Third-Party Defendants. | |

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS
THIRD-PARTY COMPLAINT FILED BY JEREMIE BEAUDRY**

*A P P E A R A N C E S*:

PAUL HASTINGS LLP
*Counsel to Third-Party Defendants Ron*
*Deutsch, Adrian Alisie, and Oren Blonstein*
200 Park Avenue
New York, NY 10166

By:     Avi Weitzman, Esq.
        Zachary Melvin, Esq.


        -and-


PAUL HASTINGS LLP
2001 Ross Avenue, Suite 2700
Dallas, TX 75201
By:     Jake Rutherford, Esq. (admitted pro hac vice)



KING & SPALDING LLP
*Counsel for Jeremie Beaudry*
1185 Avenue of the Americas
New York, New York 10036
By:     Kevin J. O'Brien, Esq.


        -and-


KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, Georgia 30309
By:     Thaddeus D. Wilson, Esq. (admitted pro hac vice)

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**


Pending before the Court are *Jeremie Beaudry's Third-Party Complaint* (the

"Complaint," ECF Doc. # 63), the *Motion to Dismiss the Third-Party Compliant By Defendants*

*Ron Deutsch, Adrian Alisie, And Oren Blonstein* (the "Motion to Dismiss," ECF Doc. # 106), the

*Memorandum of Law in Support of Third-Party Defendants Ron Deutsch, Adrian Alisie, and*

*Oren Blonstein's Motion to Dismiss Third-Party Complaint* (the "Memorandum of Law" or

"MOL," ECF Doc. # 107), the *Jeremie Beaudry's Response in Opposition to Third-Party*

*Defendants' Motion to Dismiss Third-Party Complaint* (the "Response," ECF Doc. # 112) filed

2

by Jeremie Beaudry ("Beaudry" or the "Plaintiff") and Ron Deutsch, Adrian Alisie, and Oren

Blonstein (together, the "Third-Party Defendants").  The Third-Party Defendants also filed the

*Reply of Defendants Ron Deutsch, Adrian Alisie, and Oren Blonstein in Support of Motion to*

*Dismiss Third-Party Complaint* (the "Reply," ECF Doc. # 114).

For the foregoing reasons, the Court **GRANTS** the Motion to Dismiss and finds that the

Debtor Releases **BAR** Beaudry's claims.


## I.    BACKGROUND

### A.  General Background

In the complaint that initiated this adversary proceeding, filed by Mohsin Y. Meghji (the

"Litigation Administrator") alleges that Celsius engaged financially risky behavior leading up to

Celsius' financial collapse that amount to a "fraudulent business."  (Complaint ¶ 8.)  The

Litigation Administrator asserts several causes of action involving misconduct by several former

directors and officers of Celsius.  (*Id.* ¶ 9.)  At a high level, the Litigation Administrator claims

that in or around late 2020 and early 2021, Third-Party Defendants became aware that they failed

to track Celsius's assets and liabilities and began using Bitcoin to purchase CEL tokens.[1]  (*Id.* ¶

10.)  Due to this and other mismanagement, Celsius incurred losses over $250 million.  (*Id.*)

As a result of poor asset deployment decisions and investments, Celsius was unable to

meet its expenses and lost over $1.2 billion in 2021 alone.  (*Id.* ¶ 11.)  The Litigation

Administrator alleges that in December 2021, Celsius began facing a liquidity crisis despite Alex

Mashinsky's representations to the contrary.  (*Id.* ¶ 13.)  Mashinsky was the chief executive

---

[1]    "A CEL Token was a utility token native to the Celsius Network." *In re Celsius Network LLC*, No. 22-10964 (MG), 2023 WL 7406162, at *1 (Bankr. S.D.N.Y. Nov. 9, 2023), *order corrected and superseded,* 655 B.R. 301 (Bankr. S.D.N.Y. 2023).  More specifically a utility token is a "'form of cryptographic token[ ] whose primary purpose is to allow users to consume the platform's (smart contract) services.'" *Id.* (alterations in original).

officer of Celsius at the time.  As a result of these events, the Litigation Administrator filed suit alleging various causes of action including, *inter alia*, breach of fiduciary duty, breach of director's duties, conspiracy to fraudulently misrepresent, violation of New York Deceptive Practices Act, violation of New York False Advertising Law, and violation of New Jersey Consumer Fraud Act.  (*Id.* ¶ 14.)

Beaudry is one of the defendants in the adversary proceeding filed by the Litigation Administrator.  (*Id.*)  Beaudry argues that the Litigation Administrator's pleading is deficient in that it improperly alleges he had knowledge of, or was involved in, misconduct by Celsius's officers and directors despite much of the alleged improper conduct having taken place after Beaudry's departure from Celsius.[2]  (*Id.* ¶ 15.)  Beaudry claims the Litigation Administrator should also hold the Third-Party Defendants liable to the extent that liability is imposed on Beaudry given their roles as General Counsel, Head of Internal Audit, and Chief Compliance Officer of Celsius.  (*Id.* ¶ 17.)  Beaudry repeats his claim that the Third-Party Defendants should be liable for any misconduct after January 2021 based on Beaudry's previous roles as General Counsel and/or Chief Compliance Officer because the Third-Party Defendants held those roles during that period.  (*Id.* ¶ 18.)

### B.  Jeremie Beaudry

Beaudry served as General Counsel and Chief Compliance officer beginning in June 2019 until he was demoted on or about January 28, 2021.  (*Id.* ¶¶ 22, 27.)  Beaudry claims his authority was limited and he had no day-to-day decision-making authority and instead was

---

[2]  Beaudry filed a bankruptcy case on January 12, 2026, in the Northern District of Georgia.  As a result, the Litigation Administrator's claims in this action against Beaudry are stayed.  As explained below, Beaudry's third-party party claims that he filed are not stayed and the Court may rule on the pending motion to dismiss Beaudry's third-party complaint,

4

required to go through Defendant Roni Cohen-Pavon.  (*Id.* ¶ 24.)  Beaudry was further demoted to "Senior Counsel" in or around February 2021 and was removed from the executive committee on or about March 1, 2021.  Beaudry resigned from Celsius on July 2, 2021, and his resignation was effective September 2021.  (*Id.* ¶¶ 28-30.)

Beaudry further claims that he had no functional role following his resignation in July 2021, he had no functional role within Celsius and did not go to Celsius's offices or have access to his work computer.  (*Id.* ¶ 32.)  Beaudry further claims he has had no relationship since that time, and the Third-Party Defendants oversaw all legal or regulatory issues without Beaudry's involvement from this point on.  (*Id.* ¶¶ 32, 34.)

## C.  Third-Party Defendants

Beginning first with Ron Deutsch, Beaudry notes that Deutsch replaced him as General Counsel and Head of Merger and Acquisitions of Celsius in or around February 2021.  (*Id.* ¶ 35.)  The adversary proceeding does not assert claims against Deutsch, and instead he has been deemed a "cooperating witness."  (*Id.* ¶¶ 35-37.)  Beaudry claims that the majority of the Litigation Administrator's allegations pertain to when Deutsch was acting as General Counsel for Celsius, not Beaudry.  (*Id.* ¶ 38.)

Next, Beaudry turns to Oren Blonstein, who was hired in or about February 2021 as Head of Innovation at Celsius.  (*Id.* ¶ 44.)  Blonstein also assumed the role of Chief Compliance Officer, which he held from September 2021 to November 2022.  (*Id.* ¶ 45.)  Blonstein became the Chief Compliance Officer after Beaudry resigned from Celsius.  (*Id.* ¶ 46.)  During the period from February 2021 to July 2021, when Blonstein and Beaudry worked together, Beaudry did not hold a title establishing him as the "Head" of any aspect of Celsius's business.  (*Id.*)

Beaudry points to certain allegations made by the Litigation Administrator, such as that the D&O Defendants took no action to "institute proper oversight procedures for the trading desk," fell under the responsibility of the Chief Compliance Officer, which was a role occupied by Blonstein at the relevant period for the Litigation Administrator's claims. (*Id.* ¶ 47 (internal quotation marks omitted).) Beaudry similarly claims that he did not occupy either the role of General Counsel or Chief Compliance Officer at the time Mashinsky made false statements that Celsius was working with regulators and was "fully compliant." (*Id.* ¶ 48.) Instead, those roles were occupied by Deutsch and Blonstein. (*Id.*)

Turning to Adrian Alisie, Beaudry notes that Celsius hired him as Head of Internal Audit on or about August 2021 and Alisie never worked with Beaudry. (*Id.* ¶ 54.) Beaudry claims that Alisie had direct knowledge of Celsius's failure to implement a sufficient hedging strategy and that Mashinsky had "circumvented some controls" and directed trades that were inconsistent with Celsius's overall strategy. (*Id.* ¶¶ 56-57.) Beaudry further argues that to the extent the Litigation Administrator alleges that the D&O Defendants failed to take appropriate actions to manage their business, Alisie had direct knowledge of these events, not Beaudry. (*Id.* ¶¶ 58-59.)

Alisie was further responsible for auditing Celsius's activities during the "Series B Equity Round" and he currently serves as Celsius's Chief Compliance Officer, which he has held since June 2022. (*Id.* ¶¶ 60-62.) Beaudry concludes by repeating the claim that the Litigation Administrator cannot hold him liable for alleged misconduct that occurred after he was demoted and had resigned from Celsius. (*Id.* ¶ 64.)

Accordingly, Beaudry claims that the proper parties to hold liable for claims related to breach of fiduciary duties, misconduct, or inaction after Beaudry had either been demoted or resigned from Celsius are Deutsch, Alisie, and Blonstein. (*Id.* ¶ 65.)

### D. Motion to Dismiss

1. Beaudry's Contribution Claims Were Extinguished by the Debtor Releases <u>and Should Be Dismissed</u>

The Third-Party Defendants argue that Beaudry's complaint does not state a plausible claim for relief because the contribution claims lack a legal basis. (MOL at 12.) The Third-Party Defendants begin by noting the broad scope of property of the bankruptcy estate and that a debtor or its representative has exclusive standing to assert a cause of action that belongs to the bankruptcy estate. (*Id.*) Further, the Third-Party Defendants cites case law for the proposition that a derivative claim can also only be asserted by the bankruptcy estate. (*Id.*)

The Third-Party Defendants note that New York applies the *Tooley*[3] test to determine whether claims are derivative or direct. (*Id.* at 12-13.) Additionally, the Third-Party Defendants claim that a debtor has the authority to settle or release estate claims under section 1123(b)(3)(A) of the Code, if the releases are shown to be a valid exercise of their business judgment, are fair, reasonable, and in the best interests of the estate. (*Id.* at 13.)

Furthermore, the Third-Party Defendants claim that for a release of estate causes of actions, like those contained in the Debtors' Plan (the "Debtor Releases"), courts commonly find that it acts as a bar on the claim that is the subject of the release. (*Id.* at 13-14.) A derivative claim is also extinguished by a release, and a third-party plaintiff may only assert direct claims they possess against the releasee. (*Id.* at 14.)

The Third-Party Defendants argue that the claims brought against Beaudry are estate claims, and his claim for contribution is derivative of the estate claim. (*Id.*) The Third-Party Defendants also claim that Beaudry fails to advance any independent claims that the Third-Party Defendants owed him any independent duties or caused him individual harm. (*Id.*) The Third-

---

[3]    *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004).

Party Defendants further claim that Beaudry admits that that the Third-Party Defendants owed duties to Celsius. (*Id.*) When analyzing Beaudry's claims under *Tooley*, the Third-Party Defendants claim that Celsius and/or its creditors were the entities that suffered the alleged harm for the alleged breaches of duties owed to Celsius. (*Id.* at 15.)

Furthermore, the Third-Party Defendants claim that the Debtors had exclusive authority over Beaudry's contribution claim and elected to release the Third-Party Defendants pursuant to the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* (the "Plan," Case No. 22-10964, ECF Doc. # 3577). (*Id.*) The Third-Party Defendants then examine case law that they claim stands for the proposition that a debtor's releases serve as a bar for any liability of the released parties for claims or conduct that were the subject of the releases. (*Id.* at 15-16.)

The Third-Party Defendants would also undermine the finality of approved bankruptcy settlements, the willingness of directors and officers to provide crucial services to debtors in the chapter 11 process. (*Id.* at 16.) The Third-Party Defendants claims that this case is illustrative of the chilling effect that may impact officers and directors. (*Id.*) For example, the Third-Party Defendants had been in their positions for less than 18 months as of the petition date, yet all continued their employment despite many of the principals being subject to criminal and regulatory investigations. (*Id.* at 16-17.) The Third-Party Defendants then turn to former rulings by this Court noting that the Released Parties[4] were integral to the creation of the Plan and resolving the debtors' chapter 11 cases. (*Id.* at 17.)

---

4       Plan § I.A.206.

## 2. Beaudry's Claim Fails to State a Claim for Contribution

The Third-Party Defendants begin by detailing the pleading standards for a contribution claim under New York law. (*Id.*)

Next, the Third-Party Defendants argue that Beaudry's claim for contribution fails to state a claim because he has failed to demonstrate that the Third-Party Defendants beached any duties or caused harm to the Debtors. (*Id.* at 18.) The Third-Party Defendants allege that Beaudry's claims pertain exclusively to the Third-Party Defendants' tenure at Celsius or relate to his own time at Celsius. (*Id.* at 18-19.) For the claims relating to when the Third-Party Defendants were at Celsius, the Third-Party Defendants claim that Beaudry fails to indicate that they breached any duties that they allegedly owed. (*Id.* at 19.)

The Third-Party Defendants further dispute Beaudry's claim for contribution. They argue that Beaudry's claim that he was no longer employed by Celsius in mid-2021 fails to assert a single non-conclusory allegation that Deutsch was aware of the alleged scheme to manipulate the price of CEL tokens. (*Id.*) The Third-Party Defendants also believe Beaudry's allegations against Blonstein are unavailing and fail to allege what Blonstein had knowledge of or indicate that Blonstein had knowledge of or failed to action regarding any oversight issues with respect to the Celsius trading desk. (*Id.* at 19-20.)

The Third-Party Defendants then dispute Beaudry's allegations pertaining to Alisie, claiming that Beaudry fails to allege any wrongdoing by Alisie. (*Id.* at 20.) In fact, the Third-Party Defendants claim that Beaudry's allegations indicate that Alisie uncovered Beaudry's own failure to implement internal controls and a proper governance structure when serving as General Counsel and Chief Compliance Officer. (*Id.*) Accordingly, the Third-Party Defendants claim

9

that Alisie cannot be liable for Beaudry's failures and Beaudry fails to allege that Alisie failed to

act once Alisie became aware of Beaudry's failures.  (*Id.*)

### E. Beaudry's Response

    1.  The Debtor Releases Assert an Affirmative Defense That Cannot Be Properly
<u>Resolved on a Motion to Dismiss</u>

Beaudry begins his response claiming that the Debtor Releases constitute an affirmative

defense that cannot be decided on a motion to dismiss.  (Response at 3.)  Beaudry argues that

contribution claims under New York law are governed by CPLR § 1401, which states:

> [T]wo or more persons who are subject to liability for damages for
> the same personal injury, injury to property or wrongful death, may
> claim contribution among them whether or not an action has been
> brought or a judgment has been rendered against the person from
> whom contribution is sought.

(*Id.* (quoting CPLR § 1401) (alterations in original).)  Further, CPLR § 1402 provides that "the

excess paid by him over and above his equitable share of the judgment recovered by the injured

party; but no person shall be required to contribute an amount greater than his equitable share . . .

to be determined in accordance with the relative culpability of each person liable for

contribution."  (Response at 3-4 (quoting CPLR § 1402).)

Beaudry characterizes the dispute between himself and the Third-Party Defendants as

hinging only on whether the Debtor Releases in the Plan bar his suit and claims that the Third-

Party Defendants do not dispute the applicability of the contribution statute.  (Response at 4.)

Beaudry claims that the argument pertaining to the Debtor Releases fails because the Debtor

Releases do not fall into one of the categories of pleading materials that may be considered by

the Court on a motion to dismiss.  (*Id.* at 4-5.)

Furthermore, Beaudry asks that this Court not take judicial notice of the Debtor Releases and claims that doing so would violate Federal Rule of Evidence 201. (*Id.* at 5.) Citing case law, Beaudry argues that on a motion to dismiss, taking judicial notice of factual findings to decided substantive issues is improper. (*Id.* at 5-6.)

In the event the Court takes judicial notice of the Debtor Releases, Beaudry argues the Court should still not dismiss the Complaint. (*Id.* at 6.) Beaudry contends that a release is an affirmative defense that must be pleaded in a defendant's answer, and the defendant must demonstrate the defense by a preponderance of the evidence. (*Id.*) Additionally, because affirmative defenses generally require consideration of facts outside the complaint, it is not appropriate to handle on a motion to dismiss. (*Id.*) Beaudry claims that affirmative defenses may be adjudicated on a motion or dismiss where a court can render a decision based on facts evident on the face of the complaint. (*Id.*)

Beaudry further contends that the Third-Party Defendants fail to demonstrate that the Debtor Releases facially apply to Beaudry's contribution claim and ask the Court to essentially ignore the applicable New York statute that governs the impact of a release of contribution claims. (*Id.* at 6-7.) Citing New York Law, Beaudry claims that a release on non-settling defendants is governed by N.Y. Gen. Oblig. § 15-108, which states that a release may extinguish a non-settling defendant's contribution claim "***only if*** it is a release 'within the scope' of the statute and is 'given in good faith.'" (Response at 7 (quoting *id.*) (emphasis in original).)

Beaudry argues that a release is "within the scope" of section 15-108 when, *inter alia*, the plaintiff has received monetary consideration greater than one dollar as part of the agreement. (Response at 7.) Beaudry claims the Third-Party Defendants do not argue or possess evidence

11

that the Debtors received any monetary payment for the Releases.  (*Id.*)  Accordingly, Beaudry

submits that the Releases do not fall within the scope of section 15-108.  (*Id.* at 7-8.)

Beaudry contends that the "good faith" requirement of section 15-108 requires the Court

to consider factors like whether the Releases were provided with little in return and permits the

Court to determine if the transaction was collusive.  (*Id.* at 8.)  Beaudry claims that the

Compliant or any judicially noticeable documents lack information that would permit the Court

to make a determination regarding the good faith requirement.  (*Id.* at 8-9.)  Beaudry notes the

Debtor Releases also contain an exception for "actual fraud, willful misconduct, or gross

negligence" among other things.  (*Id.* at 9 (quoting Plan Art. VIII.D).)  Beaudry characterizes the

claims brought by the Litigation Administrator against him as premised on "actual fraud,"

"willful misconduct," and "gross negligence," and, thus are not released under the Plan and a

further evidentiary record is required for the Court to make a determination on the contribution

claims.  (Response at 9-10.)

### 2.   Beaudry Claims the Complaint Sufficiently States a Claim for Contribution

Beaudry then disputes the Third-Party Defendants' claims that he failed to adequately

state a claim for contribution.  (*Id.* at 10-11.)  Beaudry argues that he pleads, with particularity,

that the Third-Party Defendants owed duties to Celsius and described how each Third-Party

Defendant's role gave rise to the duties owed.  (*Id.* at 11.)  Beaudry then states that he sets out

the specific allegations for breach of fiduciary duty as to each Third-Party Defendant in the

Complaint.  (*Id.* at 11-12.)

Beaudry characterizes the Third-Party Defendants as taking issue with the "framing" of

events, arguing that the Beaudry's timeline of events appears as if the fraud was limited to

October 2021 to January 2022.  (*Id.* at 12.)  However, Beaudry claims to have incorporated by

12

reference all of the Plaintiff's allegations against Beaudry.  (*Id.*)  Accordingly, Beaudry claims

that he has sufficiently stated a claim for contribution predicated upon the Third-Party

Defendants' alleged breach of fiduciary duties to Celsius.  (*Id.* at 12-13.)

### D.  Third-Party Defendants' Reply

#### 1.  <u>This Court Can Take Judicial Notice of, and Interpret, Its Own Orders</u>

The Third-Party Defendants dispute Beaudry's argument that this Court should not

interpret its own orders when evaluating a motion to dismiss and claims that this argument runs

counter to the efficient administration of justice.  (Reply at 2-3.)  The Third-Party Defendants

argue that the legal authority Beaudry cites for the proposition that the Court should not take

judicial notice of the Debtor Releases involves instances where a court is taking judicial notice of

a document filed in another court, or when judicial notice pertains to disputed facts.  (*Id.* at 3.)

However, the Third-Party Defendants claim that they do not request that the Court take judicial

notice of disputed facts, only the existence and authenticity of the Debtor Releases.  (*Id.*)

The Third-Party Defendants claim that this Court's decision in *Rescap Liquidating Tr. v.*

*Liebert Corp. (In re Residential Cap., LLC)*, Adv. Pro. No. 14–01969 (MG), 2015 WL 3507128

(Bankr. S.D.N.Y. June 2, 2015), forecloses Beaudry's judicial notice argument.  (Reply at 4.)

The Third-Party Defendants claim that this Court in *ResCap* took judicial notice and interpreted

certain third-party releases in the debtors' plan ordered the partial dismissal of certain third-party

claims.  (*Id.*)

Turning next to Beaudry's argument that the Releases are an affirmative defense and

cannot be adjudicated on a motion to dismiss, the Third-Party Defendants claim that there is no

factual dispute outside the pleadings that requires discovery, and, thus, no reason that the Court

cannot review the Debtor Releases at this stage.  (*Id.*)  The Third-Party Defendants argue that

courts routinely adjudicate affirmative defenses on a motion to dismiss when the defense "appears on the face of the complaint" or is "clearly established by the allegations within the complaint." (*Id.* (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998)).)

Accordingly, the Third-Party Defendants request that the Court take judicial notice of the Releases.

### 2. The Debtor Releases in the Plan Released, Discharged, and Extinguished Beaudry's Contribution Claims

The Third-Party Defendants then argue that the Debtor Releases are unambiguous, and they were released from any liabilities, including derivative claims like Beaudry seeks in his Complaint. (Reply at 5.) The Third-Party Defendants further argue that the releases are a purely legal issue that this Court can resolve on a motion to dismiss. (*Id.*)

The Third-Party Defendants claim that the contribution claims rely on alleged joint liability with the Debtor, which have been released and may no longer be pursued by Beaudry. (*Id.* at 6.) Attempts to challenge the "good faith" of the Releases constitutes a "Hail Mary" attempt. (*Id.*) The Third-Party Defendants argue that Beaudry's reliance on state law is unavailing because, to the extent prevailing state law conflicts with the Bankruptcy Code, federal law preempts the applicable state law. (*Id.* at 6-7.) Therefore, the Third-Party Defendants believe that the Releases control.

The Third-Party Defendants also argue that Beaudry's contention that the Releases were obtained collusively is incorrect. (*Id.* at 7.) They note that if Beaudry believed that the Releases were, in fact, collusively obtained then he had the opportunity to object at confirmation of the Plan and he did not do so. (*Id.*) Further, the Third-Party Defendants argue that that the Debtor

14

Releases were given in good faith, for valuable consideration, and this Court has affirmed that by granting and entering the Releases in the confirmation order (the "Confirmation Order," Case No. 22-10964, Doc. # 3972).

Moreover, the Third-Party Defendants claim that Beaudry's attacks on the Releases are an impermissible collateral attack on a final order. Citing case law, the Third-Party Defendants claim that Beaudry is unable to relitigate the Releases when he has already had the opportunity to litigate the propriety of the Confirmation Order. (*Id.* at 8.) The Third-Party Defendants also dispute Beaudry's argument that his claims fall outside the scope of the Releases because they allege fraud, willful misconduct and/or gross negligence. (*Id.*) Instead, the Third-Party Defendants claim that the Complaint entirely lacks particularized allegations of fraud, willful misconduct, or gross negligence, and notes that boilerplate allegations of the Third-Party Defendants' knowledge of the transactions are insufficient. (*Id.* at 8-9.)

The Third-Party Defendants also note that the exceptions for fraud, willful misconduct, and gross negligence are irrelevant to this dispute because the exceptions are not contained in the Debtor Releases provision, rather they are located in the third-party release and exculpation provisions of the Plan. (*Id.* at 9; Plan, Art. VIII.D-E.) Therefore, the Third-Party Defendants claim the carve out for claims relating to actual fraud, willful misconduct, and gross negligence are irrelevant.

### 3.   Beaudry Fails to Adequately Plead His Contribution Claims

The Third-Party Defendants' final point is that the Complaint should be dismissed for failure to adequately plead a claim for contribution. (Reply at 9.) The Third-Party Defendants claim that Beaudry fails to articulate any action or inaction by the Third-Party Defendants that would either demonstrate the existence or breach of fiduciary duties or failure to exercise

oversight obligations. (*Id.*) The Third-Party Defendants then dive into Beaudry's case citations and claim that his allegations suffer the same defects as the plaintiffs in his citations. (*Id.* at 10.) Accordingly, the Third-Party Defendants ask this Court to dismiss for failure to adequately plead a claim for contribution. (*Id.*)

## II.   LEGAL STANDARD

A motion to dismiss for failure to state a claim is governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to an adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"). *See* FED. R. BANKR. P. 7012; Fed. R. Civ. P. 12(b)(6). The "court must accept a complaint's allegations as true," and "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). Further, when reviewing the sufficiency of a complaint, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A court's role in evaluating a motion to dismiss is to determine the legal feasibility of the complaint, not to weigh the evidence that may be offered to support it. *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998).

In deciding a motion to dismiss, the Court accepts a complaint's factual allegations as true and must draw all reasonable inferences in favor of the plaintiff. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321-23 (2007); s*ee also Littlejohn v. City of N.Y.*, 795 F.3d 297, 306 (2d Cir. 2015). Although the allegations must be taken as true, the complaint must contain more than just a formulaic recitation of the elements of a cause of action, and the court

16

should "identify[] allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664; *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (stating that "bald assertions and conclusions of law will not suffice"). To survive a motion to dismiss for failure to state a claim, a plaintiff's obligation to "provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "To show facial plausibility, the Claimant must plead 'factual content that allows the court to draw the reasonable inference that the [defendant] is liable for the misconduct alleged.'" *In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) (citation omitted).

The Court's responsibility is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Liu v. Credit Suisse First Bos. Corp. (In re Initial Pub. Offering Sec. Litig.)*, 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation makers and citation omitted); *see also Koppel v. 4987 Corp.*, 167 F.3d 125, 138 (2d Cir. 1999) (concluding that plaintiff need only allege, not prove, sufficient facts to survive a motion to dismiss). The Court considers "facts stated on the face of the complaint and in documents appended to the complaint or incorporated in the complaint by reference, as well as to matters of which judicial notice may be taken." *Hertz Corp. v. City of N.Y.*, 1 F.3d 121, 125 (2d Cir. 1993). Dismissal is only warranted where it appears beyond doubt that the plaintiff can prove no sets of facts in support of her claim which would entitle her to relief. *See Maxwell Commun. Corp. Pub. Ltd. Co. by Homan v. Societe Generale (In re Maxwell Commun. Corp. Pub. Ltd. Co.)*, 93 F.3d 1036, 1044 (2d Cir. 1996).

17

## III.   DISCUSSION

### A.   Beaudry's Bankruptcy Filing Does Not Bar Adjudication of the Complaint

Although not raised by the parties, Beaudry has filed for bankruptcy in the Northern District of Georgia.  *See In re Jeremie Beaudry*, Case No. 26-50508 (PMB) (Bankr. N.D.G.A. 2026).  Section 362(a) of the Bankruptcy Code institutes an automatic stay upon a debtor's filing for bankruptcy and stays all actions *against the debtor*.  11 U.S.C. § 362(a).  However, the automatic stay does not apply to actions *initiated* by the debtor.  9A COLLIER ON BANKRUPTCY ¶ 6009.04 (16th 2026).  Therefore, the automatic stay resulting from Beaudry's bankruptcy filing does not prevent this Court from ruling on the Motion.

### B.   The Court May Take Judicial Notice of the Debtor Releases

The Federal Rules of Evidence permit courts to take judicial notice of "an adjudicative fact" that is either (1) "generally known within the trial court's territorial jurisdiction" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  FED. R. EVID. 201.

This Court has previously interpreted Rule 201 to permit this Court to take judicial notice of public filings.  *In re Truong*, No. 09-11047, 2009 WL 2929261, at *5 (Bankr. S.D.N.Y. Sept. 3, 2009) (citing *Hong Mai Sa v. Doe*, 406 F.3d 155, 158 (2d Cir. 2005) ("[W]e can take judicial notice of this Court's files as well as those of the district court.")).  This Court has further held that it "may also take judicial notice *of a prior court order*, to the extent it 'is generally known within the trial court's territorial jurisdiction' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'"  *In re Residential Cap., LLC*, 2015 WL 3507128, at *6 (citing FED. R. CIV. P. 201 and *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142,

18

150 (2d Cir. 1993)) (emphasis added); *see also In re Papatones*, 143 F.3d 623, 624 n. 3 (1st Cir. 1998) (citing *In re Henderson,* 197 B.R. 147, 156 (Bankr. N.D. Ala. 1996) ("The court may take judicial notice of its own orders and of records in a case before the court, and of documents filed in another court.")).  This Court may also interpret and enforce its own orders.  *E.g.*, *In re Motors Liquidation Co.*, 674 B.R. 425, 443 (Bankr. S.D.N.Y. 2025).

The Debtor Releases are contained in the Confirmation Order issued by this Court in the main proceeding related to this adversary proceeding.  (Confirmation Order ¶ 288.)  As a result, there is little doubt as to whether this information "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

The cases cited by Beaudry are distinguishable as neither case cited by Beaudry references release provisions that were contained in a prior order of *that* court.  *See Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (declining to take judicial notice of an unauthenticated release agreement purportedly entered into in conjunction with a settlement agreement entered by a state court); *see also Edo v. Martiny*, No. 15-CV 202 (CBA), 2016 WL 7839337, at *2 (E.D.N.Y. Aug. 26, 2016), *rep. and rec. adopted*, No. 15 CV-202 (CBA) (SMG), 2017 WL 785653 (E.D.N.Y. Mar. 1, 2017) (declining to take judicial notice of a release provision that were not part of the record in the prior action and were not filed actually filed with the court in the instant case).[5]

Accordingly, the Court concludes that it **MAY** take judicial notice of the Debtor Releases.

---

[5]   Judge Gold explicitly noted that "courts have explicitly declined to take judicial notice of releases and other documents related to court filings but not actually filed with the court," *Edo v. Martiny*, 2016 WL 7839337, at *2, which cuts against the argument that this Court cannot take judicial notice of an order that it has entered in related litigation.

## C. Beaudry's Contribution Claims and the Debtor Releases

### 1. Beaudry's Claim is Derivative

New York law establishes a right to contribution under Civil Practice Law and Rules § 1401. N.Y. C.P.L.R. § 1401 (McKinney); *In re Rosenfeld*, 543 B.R. 60, 68 (Bankr. S.D.N.Y. 2015). New York lacks a clear approach to determine whether a claim is direct or derivative; however, the First, Second, and Third Departments, as well as the Second Circuit have applied the test adopted by the Delaware Supreme Court in *Tooley*. *See In re 305 E. 61st St. Grp. LLC*, 130 F.4th 272, 279 (2d Cir. 2025). A claim is derivative when "any pecuniary loss plaintiffs suffered derives from a breach of duty and harm to the business entity. . . ." *Yudell v. Gilbert*, 949 N.Y.S.2d 380, 384 (1st Dep't 2012) (applying *Tooley*). The Second Circuit instructs courts to "look to the nature of the wrong and to whom the relief should go" in order to determine if a claim is direct or derivative. *305 E. 61st St. Grp.*, 130 F.4th at 279 (quoting *Tooley*, 845 A.2d at 1039). Further, a direct claim must be "independent of any alleged injury to the corporation." *305 E. 61st St. Grp.*, 130 F.4th at 279.

Beaudry must demonstrate that (1) the claimed injury is "independent of any alleged injury to the corporation," (2) "the duty breached was owed to" Beaudry, and (3) Beaudry "can prevail without showing an injury to the corporation." *Id.* at 280 (quoting *Tooley*, 845 A.2d at 1039.)

Beaudry has failed to demonstrate that the claimed injury is independent of the alleged injury to the corporation. In fact, Beaudry alleges that the Third-Party Defendants owed fiduciary duties to Celsius and states the following

> Deutsch, Alisie, and Blonstein ***owed fiduciary duties to Celsius*** to
> exercise the care, skill, and diligence that an ordinarily careful and

prudent person would use when carrying out the functions exercised
by the directors and officers in relation to the companies they serve.

(Complaint ¶ 69 (emphasis added).)

Beaudry's contribution claims are entirely dependent upon the injury suffered by Celsius.

Beaudry has not demonstrated that there was a duty owed to him, much less that this duty was

breached.  Beaudry similarly cannot demonstrate that he can prevail without showing injury to

the corporation.  Beaudry has failed to provide an independent harm that would entitle him to

contribution other than the harm that Celsius incurred and seeks contribution from the Third-

Party Defendants on that basis.  As a result, Beaudry fails to satisfy any prong articulated by the

court in *Tooley*.

### 2.   Beaudry's Claim Falls Within the Scope of the Debtor Releases

Having determined that Beaudry has failed to allege an independent claim, the Court

turns to whether the claims that Beaudry brings are released by the Debtor Releases.  In relevant

part, the Debtor Releases provide:

> [A]s of the Effective Date, . . . for good and valuable consideration,
> . . . to the fullest extent allowed by applicable law, *each Released
> Party is hereby deemed conclusively, absolutely, unconditionally,
> irrevocably, and forever released and discharged by each and all
> of the Debtors, . . . and any and all other Entities who may purport
> to assert any claim or Cause of Action, directly or derivatively*, by,
> through, for, or because of the foregoing Entities, *from any and all
> claims*, interests, obligations, rights, suits, *damages, Causes of
> Action, remedies, and liabilities whatsoever, including any
> derivative claims, asserted by or assertable on behalf of any of the
> Debtors*, their Estates, or the Post-Effective Date Debtors, as
> applicable, *whether known or unknown*, foreseen or unforeseen,
> matured or unmatured, liquidated or unliquidated, *fixed or
> contingent, accrued or unaccrued, existing or hereafter arising*, in
> law (or any applicable rule, statute, regulation, treaty, right, duty or
> requirement), equity, contract, tort, or otherwise *that the Debtors,
> their Estates, or the Post-Effective Date Debtors would have been
> legally entitled to assert in their own right* . . . based on or relating

21

> to, ***or in any manner arising from***, in whole or in part, the Debtors
> (including the management, ownership, or operation thereof), . . .
> the business or contractual arrangements between any Debtor and
> any Released Party, . . . or upon any other related act, or omission,
> transaction, agreement, event, or other occurrence related or relating
> to any of the foregoing taking place on or before the Effective Date.

Plan, Art. VIII.C (emphasis added).  Beaudry argues that the release must satisfy N.Y. Gen.

Oblig. § 15-108, which requires that a release be "given in good faith" and "within the scope" of

the provision.  (Response at 6-7; N.Y. Gen. Oblig. § 15-108.)

As a preliminary matter, state law is preempted by the Bankruptcy Code and courts have

noted that "[o]nce a party enters bankruptcy, the Bankruptcy Code constitutes a wholesale

preemption of state laws regarding creditors' rights."  *Levine v. B & R Acquisition Partners,*

*LLC*, 674 B.R. 838, 849 (N.D.N.Y. 2025) (quoting *In re Trib. Co. Fraudulent Conv. Litig.*, 946

F.3d 66, 82 (2d Cir. 2019)); *Eastern Equip. and Servs. Corp. v. Factory Point Nat. Bank,*

*Bennington*, 236 F.3d 117, 120 (2d Cir. 2001) ("The United States Bankruptcy Code provides a

comprehensive federal system of penalties and protections to govern the orderly conduct of

debtors' affairs and creditors' rights"); *In re Miles*, 430 F.3d 1083, 1091 (9th Cir. 2005)

("Congress intended the Bankruptcy Code to create a whole scheme under federal control that

would adjust all of the rights and duties of creditors and debtors alike. . . .").  Therefore, N.Y.

Gen. Oblig. § 15-108 is preempted to the extent it conflicts with the Bankruptcy Code.

However, even if N.Y. Gen. Oblig. § 15-108 is not in conflict with the Bankruptcy Code,

Beaudry's arguments that the Debtor Releases are neither within the scope of section 15-108 and

were not "given in good faith" are unavailing.  This Court has already determined in the

Confirmation Order that the releases were given for valuable consideration and reflected a "good

faith settlement and compromise. . . ."  (Confirmation Order ¶ 24.)

22

Furthermore, the Confirmation Order cannot be collaterally attacked. *In re Chedick*, No. 95-01096, 1996 WL 762329, at *1 (Bankr. D.D.C. Mar. 22, 1996) ("[T]he order of confirmation is not subject to collateral attack."); *see Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152 (2009). A collateral attack exists when there is "[a]n attack on a judgment ***in a proceeding other than a direct appeal***." *United States v. Asakevich*, 810 F.3d 418, 423 (6th Cir. 2016) (alterations and emphasis in original). The Supreme Court has further noted "'[i]t is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected.'" *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) (quoting *Walker v. Birmingham,* 388 U.S. 307, 314 (1967)) (alterations in original). Accordingly, Beaudry cannot attack the validity of the Debtor Releases collaterally, and he failed to object or appeal the Confirmation Order in the first instance. The Confirmation Order is a final order, and Beaudry may not unwind the Releases on this now.

Beaudry also argues the Debtor Releases contain a carve out for claims pertaining to "actual fraud, willful misconduct, or gross negligence." (Response at 9.) However, the Third-Party Defendants correctly note that this carve out is contained in the third-party release provision (Plan Art. III.D) and the exculpation provision (Plan Art. III.E), and ***not*** in the Debtor Releases (Plan Art III.C). Therefore, the carve out is not applicable

Accordingly, the Court finds that the Debtor Releases **BAR** Beaudry's claims.

## IV.    CONCLUSION

For the reasons explained above, the Court **GRANTS** the Motion to Dismiss and find

that the Debtor Releases **BAR** Beaudry's claims.

**IT IS SO ORDERED.**

Dated:    July 6, 2026
          New York, New York


_Martin Glenn_
MARTIN GLENN
Chief United States Bankruptcy Judge